UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAUDE A. REESE, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>vs.<br><br>THE MCGRAW-HILL COMPANIES, INC., HAROLD MCGRAW III, and ROBERT J. BAHASH,<br><br>                                    Defendants. | Civil Action No. 1:08-cv-07202-SHS<br><br>LEAD PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR SECURITIES FRAUD AND MEMORANDUM OF LAW IN SUPPORT THEREOF |

Lead Plaintiff Boca Raton Firefighters and Police Pension Fund ("Plaintiff"), individually and on behalf of a proposed class (the "Class"), pursuant to Fed. R. Civ. P. 15(a), hereby moves the Court for leave to file a Second Amended Consolidated Class Action Complaint for Securities Fraud (the "Second Amended Complaint"). A true and correct copy of the Second Amended Complaint is attached hereto as Exhibit A. In support of this motion, Plaintiff states:

**MEMORANDUM OF LAW**

This action is a consolidated securities fraud class action brought by Plaintiff pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. Plaintiff brings this action on behalf of a Class of all purchasers of the publicly traded common stock of The McGraw-Hill Companies, Inc. ("McGraw-Hill" or the "Company") between October 21, 2004 and March 11, 2008, inclusive (the "Class Period"). Claims for securities fraud are brought against defendants McGraw-Hill, Harold McGraw III ("McGraw") and Robert J. Bahash ("Bahash") (McGraw-Hill, McGraw and Bahash are sometimes collectively referred to as "Defendants").

The consolidated complaint in this action was originally filed on May 7, 2008 (the "Complaint"). Subsequently, the operative Amended Consolidated Class Action Complaint for Securities Fraud (the "First Amended Complaint") was filed on December 3, 2008. The Complaint and First Amended Complaint allege Defendants made false and misleading statements regarding McGraw-Hill's true financial circumstances and future business prospects and omitted material information that would have rendered those statements not false and misleading.

Defendants filed a motion to dismiss the First Amended Complaint (the "Motion to Dismiss") on February 3, 2009. Plaintiff opposed the Motion to Dismiss on April 2, 2009, and Defendants filed their reply supporting the Motion to Dismiss on May 4, 2009.

The First Amended Complaint alleges in great detail that Defendants, acting with scienter, made numerous false and misleading statements to investors concerning the Company's financial performance as well as the quality of ratings and surveillance of risky residential mortgage backed securities ("RMBS") and collateralized debt obligations ("CDOs") by the Company's Standard & Poor's ("S&P") brand. The First Amended Complaint alleges the Company's ratings of RMBS and CDOs during the Class Period suffered from many problems, and as significant problems in the RMBS and CDO markets began to emerge, McGraw-Hill promoted itself as a company both positioned and capable of addressing such problems with its ratings, ratings criteria, ratings staff, and ratings models, as well as through active surveillance of the transactions rated by its S&P brand. In reality and contrary to Defendants' representations, the truth was that Defendants, in order to mislead investors and artificially inflate the price of McGraw-Hill stock, omitted critical, then-known material facts, including, among other things, the Company's ongoing failure to monitor the RMBS and CDOs it rated.

For example, the First Amended Complaint alleges Defendants misled the market by touting their ratings models as state of the art, while deliberately not updating them to reflect broader, more recent data because they knew doing so would require them to lower ratings and would cause the Company to lose market share to its competitors for lucrative RMBS and CDO ratings. The First Amended Complaint further alleges Defendants also misled the market as to the frequency of and quality of its ratings surveillance, and failed to disclose that it virtually abandoned its own procedures both to rate as many deals as possible and to avoid downgrading deals it had already rated.

The proposed Second Amended Complaint describes substantial and material recently revealed evidence supporting, among other things, Plaintiff's existing scienter allegations and corroborating the evidence described in the First Amended Complaint. Specifically, on April 23, 2010, the United States Senate Permanent Subcomittee on Investigations, Committee on Homeland Security and Governmental Affairs (the "Senate Subcommittee"), held a hearing on "Wall Street and the Financial Crisis: The Role of Credit Rating Agencies." The hearing examined the cause and consequences of the 2008 financial crisis and focused solely on S&P and Moody's Investor Service ("Moody's"). The hearing represented the culmination of an 18-month investigation that included, among other things, the Senate Subcommittee's review of millions of pages of documents and more than 100 interviews and depositions. In conjunction with the hearing, the Senate Subcommittee released many findings of fact with regard to S&P and Moody's:

1) **Inaccurate Rating Models**. From 2004 to 2007, Moody's and Standard & Poor's used credit rating models with data that was inadequate to predict how high risk residential mortgages, such as subprime, interest only, and option adjustable rate mortgages, would perform.

2) **Competitive Pressures**. Competitive pressures, including the drive for market share and need to accommodate investment bankers bringing in business, affected the credit ratings issued by Moody's and Standard & Poor's.

3)    **Failure to Re-evaluate**. By 2006, Moody's and Standard & Poor's knew their ratings of residential mortgage backed securities (RMBS) and collateralized debt obligations (CDOs) were inaccurate, revised their rating models to produce more accurate ratings, but then failed to use the revised model to re-evaluate existing RMBS and CDO securities, delaying thousands of rating downgrades and allowing those securities to carry inflated ratings that could mislead investors.

4)    **Failure to Factor In Fraud, Laxity, or Housing Bubble**. From 2004 to 2007, Moody's and Standard & Poor's knew of increased credit risks due to mortgage fraud, lax underwriting standards, and unsustainable housing price appreciation, but failed adequately to incorporate those factors into their credit rating models.

5)    **Inadequate Resources**. Despite record profits from 2004 to 2007, Moody's and Standard & Poor's failed to assign sufficient resources to adequately rate new products and test the accuracy of existing ratings.

6)    **Mass Downgrades Shocked Market**. Mass downgrades by Moody's and Standard & Poor's, including downgrades of hundreds of subprime RMBS over a few days in July 2007, downgrades by Moody's of CDOs in October 2007, and downgrades by Standard & Poor's of over 6,300 RMBS and 1,900 CDOs on one day in January 2008, shocked the financial markets, helped cause the collapse of the subprime secondary market, triggered sales of assets that had lost investment grade status, and damaged holdings of financial firms worldwide, contributing to the financial crisis.

7)    **Failed Ratings**. Moody's and Standard & Poor's each rated more than 10,000 RMBS securities from 2006 to 2007, downgraded a substantial number within a year, and, by 2010, had downgraded many AAA ratings to junk status.

8)    **Statutory Bar**. The U.S. Securities and Exchange Commission is barred by statute from conducting needed oversight into the substance, procedures, and methodologies of the credit rating models.

9)    **Legal Pressure for AAA Ratings**. Legal requirements that some regulated entities, such as banks, broker-dealers, insurance companies, pension funds, and others, hold assets with AAA or investment grade credit ratings, created pressure on credit rating agencies to issue inflated ratings making assets eligible for purchase by those entities.

The Senate Subcommittee's formal findings of fact and the related McGraw-Hill documents made public at the hearing are additional powerful, previously concealed evidence of Defendants' scienter, and directly support Plaintiff's allegations of fraud. As a result, Plaintiff seeks to file the

Second Amended Complaint to incorporate the additional evidence revealed by the Senate Subcommittee and to further bolster Plaintiff's existing allegations of fraud.

Pursuant to Federal Rule of Civil Procedure 15, leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Gary Plastic Packaging Corp. v. Merrill Lynch,Pierce, Fenner & Smith, Inc*., 756 F.2d 230, 236 (2d Cir. 1985) ("[I]n the preliminary stages of the lawsuit, the trial court should . . . freely grant leave to amend the complaint under Rule 15."); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block in Bldg. 1 Housing Dev. Fund Co.,* 608 F.2d 28, 42 (2d Cir. 1979) ("[I]f the plaintiff has at least colorable grounds for relief, justice does so require [leave to amend]."); *Omega Advisors, Inc. v. Lewis*, No. 06 Civ. 834(NRB), 2010 WL 726956, at *1 (S.D.N.Y. Feb. 17, 2010) ("The defendant has failed to convincingly demonstrate that any of the factors that traditionally counsel against granting leave to amend are present in this case . . . particularly so given that document discovery is still underway and that depositions have not yet begun."). Moreover, leave to file an amended complaint should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. *Milanese v. Rust-Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001) (amendment to complaint was not futile); *Abbatiello v. Monsanto Co*., 571 F. Supp. 2d 548, 552 (S.D.N.Y. 2008) (amendment to complaint would not cause undue prejudice or delay). Further, in securities fraud suits under the Private Securities Litigation Reform Act of 1995, courts in the Second Circuit have repeatedly warned against taking a "wait and see" approach when it comes to requesting leave to amend. *See*, *e.g*., *In re Gildan Activewear, Inc*. Sec. Litig., No. 08 Civ. 5048(HB), 2009 WL 4544287, at *5 (S.D.N.Y. Dec. 4, 2009).

As set forth above, Plaintiff seeks leave to amend to include the recently revealed additional evidence of Defendants' fraudulent scheme made public by the Senate Subcommittee on April 23,

–6–

2010. The amendment sought is not in bad faith or for purposes of delay. Finally, the filing of the Second Amended Complaint in this action will not prejudice Defendants, as there has been no discovery in this action and the case remains at the pleadings stage.

On May 19-20, 2010, counsel for Plaintiff conferred with counsel for Defendants regarding the relief requested herein. Counsel for Defendants stated Defendants do not consent to filing of the attached Second Amended Complaint.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

1. Granting this motion;

2. Instructing the Clerk to file Lead Plaintiff's "Second Amended Consolidated Class Action Complaint for Securities Fraud" tendered with this Motion; and

3. Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted,

DATED: May 21, 2010

ROBBINS GELLER
 RUDMAN & DOWD LLP
DAVID J. GEORGE (*pro hac vice*)
ROBERT J. ROBBINS (*pro hac vice*)

*/s/ David J. George*
DAVID J. GEORGE

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER
 RUDMAN & DOWD LLP
DAVID A. ROSENFELD
MARIO ALBA, JR.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiff*

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: 305/529-2801
305/447-8115 (fax)

*Additional Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 21, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

    */s/ David J. George*
    David J. George