**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CLAUDE A. REESE, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>     - *against* -<br><br>THE MCGRAW-HILL COMPANIES, INC., HAROLD MCGRAW III and ROBERT J. BAHASH,<br><br>         Defendants. | Civil Action No. 1:08-cv-07202-SHS |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Floyd Abrams
Susan Buckley
Tammy L. Roy
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000
(212) 269-5420 (fax)

*Attorneys for Defendants The McGraw-Hill Companies, Inc., Harold McGraw III, and Robert J. Bahash*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 4

ARGUMENT ....................................................................................................................... 8

I.  LEAVE TO AMEND SHOULD BE DENIED ON THE GROUNDS OF
    FUTILITY .............................................................................................................. 8

    A.  The Proposed TAC Fails to Allege Any Facts Giving Rise to a Strong
        Inference of Scienter ................................................................................... 8

        1.  The Proposed TAC Fails to Allege Any Plausible Motive for Defendants
            to Have Engaged in the Alleged Fraud ........................................... 9

        2.  The Proposed TAC Fails to Allege Facts Demonstrating that Any of the
            Defendants Acted With Conscious Misbehavior or Recklessness ........... 10

            (a)  Plaintiffs' Proposed New Exhibits Do Not Support an Inference of
                 Scienter ................................................................................. 10

            (b)  The Statements of Plaintiffs' Proposed New "Confidential
                 Witnesses" Do Not Support an Inference of Scienter ................... 13

            (c)  Plaintiffs' Attempt to Bolster Their "Core Operations" Theory
                 Does Not Support an Inference of Scienter ................................. 14

    B.  The Proposed TAC Fails Adequately to Allege Loss Causation ........................ 15

        1.  The Proposed TAC Fails to Address the Marketwide Downturn ............ 15

        2.  In the Proposed TAC, Plaintiffs Again Shift Positions on the Alleged
            Corrective Disclosures, Further Undermining Any Inference That a Fraud
            Was Revealed ................................................................................ 17

    C.  The Proposed TAC Fails to Plead Any Actionable Misstatement or
        Omission ................................................................................................... 19

II.  ALLOWING THE FILING OF THE PROPOSED TAC WOULD
     FRUSTRATE THE PURPOSE OF THE PSLRA ......................................................... 23

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Andropolis* v. *Red Robin Gourmet Burgers, Inc.,* 505 F. Supp. 2d 662
(D. Colo. 2007) ......................................................................... 22n

*California Public Employees' Retirement System* v. *Chubb Corp.,* 394
F.3d 126 (3d Cir. 2004)............................................................ 23, 24

*In re Champion Enterprises, Inc. Securities Litigation,* 145 F. Supp. 2d
871 (E.D. Mich. 2001), *aff'd, Miller* v. *Champion Enterprises, Inc.,*
346 F.3d 660 (6th Cir. 2003) .................................................. 22, 23

*In re Cybershop.com Securities Litigation,* 189 F. Supp. 2d 214 (D.N.J.
2002) ........................................................................................ 23

*In re Duane Reade Inc. Securities Litigation,* 2003 WL 22801416
(S.D.N.Y. Nov. 25, 2003) ........................................................ 22n

*ECA* v. *JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) .............. 9, 22n

*In re Elan Corp. Securities Litigation,* 543 F. Supp. 2d 187 (S.D.N.Y.
2008) ........................................................................................ 13

*Epirus Capital Management, LLC* v. *Citigroup Inc.,* 2010 WL 1779348
(S.D.N.Y. Apr. 28, 2010)......................................................... 9

*In re FBR Inc. Securities Litigation,* 544 F. Supp. 2d 346 (S.D.N.Y.
2008) ........................................................................................ 22n

*Fielding* v. *Tollaksen,* 510 F.3d 175 (2d Cir. 2007) ........................... 8

*Fields* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 2004 WL
626180 (S.D.N.Y. Mar. 30, 2004) ........................................... 8

*Garber* v. *Legg Mason, Inc.,* 537 F. Supp. 2d 597 (S.D.N.Y. 2008).... 22n

*In re Gildan Activewear, Inc. Securities Litigation,* 2009 WL 4544287
(S.D.N.Y. Dec. 4, 2009)............................................................ 25

*In re JP Morgan Chase Securities Litigation*, 363 F. Supp. 2d 595
(S.D.N.Y. 2005)........................................................................ 10

*Kalnit* v. *Eichler*, 264 F.3d 131 (2d Cir. 2001).................................. 10

**Page**

*Kinsey* v. *Cendant Corp.,* 2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) ............ 11

*Lentell* v. *Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ...................... 16, 19

*Miller* v. *Champion Enterprises, Inc.,* 346 F.3d 660 (6th Cir. 2003) .................. 23

*In re NAHC, Inc., Securities Litigation,* 306 F.3d 1314 (3d Cir. 2002)............... 23

*In re Nokia Oyj (Nokia Corp.) Securities Litigation,* 423 F. Supp. 2d
364 (S.D.N.Y. 2006) ...................................................................... 22n

*Novak* v. *Kasaks,* 216 F.3d 300 (2d Cir. 2000)...................................................... 10

*PI, Inc.* v. *Quality Products, Inc.,* 907 F. Supp. 752 (S.D.N.Y. 1995) ................ 24n

*Rothman*  v. *Gregor,* 220 F.3d 81 (2d Cir. 2000) .................................................. 2n

*Rozenzweig* v. *Azurix Corp.,* 332 F.3d 854 (5th Cir. 2003)................................ 14n

*Shields* v. *Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir. 1994) ......................... 2n

*In re Tamoxifen Citrate Antitrust Litigation,* 466 F.3d 187 (2d Cir.
2006) ........................................................................................... 8

*Teamsters Local 445 Freight Division Pension Fund* v. *Dynex Capital
Inc.*, 531 F.3d 190 (2d Cir. 2008) ................................................ 10-11

*Turkenitz* v. *Metromotion, Inc.,* 1997 WL 773713 (S.D.N.Y. Dec. 12,
1997) ........................................................................................... 25n

**Rules**

Fed. R. Civ. P.

9(b)............................................................................................... 8, 20, 22n, 24
15(a) ............................................................................................ 8, 23

**Statutes**

Private Securities Litigation Reform Act of 1995

15 U.S.C. § 78u-4(b)(1) (2006) ....................................................... 22n
15 U.S.C. § 78u-4(b)(2) (2006) ....................................................... 14n

**Page**

Securities Exchange Act of 1934

    § 10(b), 15 U.S.C. § 78j(b) (2006)......................................................... 5-7, 7n
    § 20(a), 15 U.S.C. § 78t(a) (2006) ....................................................... 5-7, 7n

**Treatises**

6 Charles A. Wright *et al.*, *Federal Practice and Procedure* (2d ed.
    1990) ....................................................................................................... 23

Defendants The McGraw-Hill Companies, Inc. ("McGraw-Hill"), Harold McGraw III and Robert J. Bahash (collectively, "Defendants"), respectfully submit this memorandum of law in opposition to Lead Plaintiff's Motion for Leave to File Second Amended Consolidated Class Action Complaint[1] for Securities Fraud (the "Motion").

## PRELIMINARY STATEMENT

This case has been pending for almost three years. Now, after three opportunities to plead a viable securities fraud claim and more than fifteen months after Defendants filed their motion to dismiss the currently operative Second Amended Complaint ("SAC"), Plaintiffs seek yet another bite at the apple. Plaintiffs' purported justification for moving to amend their complaint at this late stage is that certain documents released by the United States Senate Permanent Subcommittee on Investigations ("PSI") on April 23, 2010, which are attached as exhibits to the Proposed TAC, provide "additional, powerful previously concealed evidence of Defendants' scienter, and directly support Plaintiff's allegations of fraud." (Motion at 4; *see also id.* at 3; Proposed TAC ¶ 251). Yet, the only subjects that the PSI exhibits address are the *very subjects* that Plaintiffs have repeatedly stressed this case is not about: namely, S&P's credit ratings, its monitoring of those ratings, and its ratings models. *See* Proposed TAC ¶ 3 ("This case is not about the substance of S&P's actual ratings" or "an attack on the veracity or reasonableness of [S&P's ratings] opinions."); Proposed TAC ¶ 214 ("[T]his case is not based upon S&P's failure to monitor its rated RMBS and CDOs, nor is it based upon the Company's failed ratings models."). It is difficult to see why Plaintiffs should be granted leave to amend when the material they seek to add to their pleading addresses subjects the pleading itself expressly disclaims as the basis for its claims.

---

[1] As Plaintiffs' preferred complaint is in fact the *third amended complaint* sought to be filed in this action, it will be referred to herein as the "Proposed Third Amended Complaint" or "Proposed TAC."

As did the SAC, the Proposed TAC grounds its claims of securities fraud on numerous public statements — quoted at length and with a complete lack of specificity — that focus on McGraw-Hill's financial condition (accurately reported) and earnings projections (also accurately reported) throughout the class period. According to Plaintiffs, these statements supposedly reveal — although how is not clear — that McGraw-Hill and its senior management misled its shareholders about the Company's true financial condition. But the new allegations Plaintiffs seek to inject have nothing to do with McGraw-Hill's financial position and everything to do with the supposed inaccuracy of S&P's ratings of two asset classes among the many that S&P rates, *i.e.*, residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs"). So, for example, Plaintiffs offer numerous e-mails authored by S&P-level employees — not McGraw-Hill management — commenting on ratings methodology and ratings surveillance for RMBS and CDOs. In a similar vein, Plaintiffs seek to add background allegations concerning the findings of the PSI, published long after the market meltdown and the class period, decrying S&P's inability to predict the performance of mortgage-backed debt of others. But nothing in these new allegations contain even a hint of fraud, let alone fraud on McGraw-Hill's investors. At most — and consistent with the other deficient allegations of the Proposed TAC — Plaintiffs' new allegations suggest that S&P's management should have been more alert to potential flaws with its ratings models and methodologies for RMBS and CDOs, allegations which simply do not state an actionable claim against McGraw-Hill or the Individual Defendants under the federal securities laws.[2]

Despite the heft that the attached exhibits add to the Proposed Third Amended Complaint, as demonstrated below, they cannot salvage the three major defects of the SAC iden-

---

[2] *See*, *e.g.*, *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("The pleading strongly suggests that the defendants should have been more alert and more skeptical, but nothing alleged indicates that management was promoting a fraud."); *Rothman* v. *Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) ("Generally, poor business judgment is not actionable under section 10(b) and Rule 10b-5.").

tified in the Defendants' motion to dismiss the SAC.  First and most fundamentally, the discon-

nect between Plaintiffs' securities fraud theory against McGraw-Hill and Plaintiffs' new allega-

tions about S&P's credit ratings highlights one of the major continued flaws of Plaintiffs' claims:

they have not and cannot plead that any of the Individual Defendants or McGraw-Hill acted with

the requisite degree of scienter.  Indeed, none of the proposed new exhibits — or any of the ac-

tual allegations in the newly proposed complaint — raise *any* inference of scienter as to the Indi-

vidual Defendants or McGraw-Hill.  Only three of the new documents attached to the TAC even

*reference* a McGraw-Hill officer or employee and even those documents far fall short of reveal-

ing facts that would assist Plaintiffs in their failed efforts to plead scienter.  Because Plaintiffs'

proposed amendment would not remedy their failure to plead scienter in the SAC, leave to

amend should be denied as futile.  *See* Section I.A.

       Plaintiffs' proposed new, "recently revealed" allegations also do nothing to assist

Plaintiffs in pleading loss causation or even identifying the alleged actionable misstatements or

omissions in McGraw-Hill's public statements.  For example, the Proposed TAC attempts to bol-

ster the inadequate loss causation allegations of the SAC — the deficiencies of which were out-

lined in detail in Defendants' motion to dismiss the SAC — by adding references to three addi-

tional alleged "corrective disclosures" between July 10-12, 2007 that coincided with drops in

McGraw-Hill's stock price but in fact do not relate at all to Plaintiffs' theory of fraud.  (Proposed

TAC ¶¶ 342-46, 401).  The Proposed TAC makes a similarly feeble effort to overcome the "puz-

zle-pleading" of the SAC — the deficiencies of which were also outlined in detail in Defendants'

motion to dismiss the SAC — which fails, yet again, to satisfy the basic pleading requirement

that Plaintiffs identify, with specificity, which statements serve the basis of their claims and why

such statements were allegedly false and misleading when made.  (Proposed TAC ¶¶ 252-381).

Moreover, Plaintiffs' efforts in the Proposed TAC to correct these defects of the SAC are nothing

more than a direct response to arguments made in Defendants' Memorandum of Law in Support

of Their Motion to Dismiss the SAC ("Opening Brief"), filed with this Court on February 3,

2009.  Thus, not only does the Proposed TAC fail to cure the deficiencies of the SAC with re-

spect to these elements, thus rendering leave to amend futile for this reason as well (*see* Section I.B & I.C), but Plaintiffs should have attempted to cure these defects many months ago after Defendants' motion to dismiss the SAC was filed.   Allowing the filing of the Proposed TAC at this late stage, thereby granting Plaintiffs a *fourth* attempt to plead a viable securities fraud claim, would frustrate the very purpose of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and should not be countenanced.  *See* Section II.

## <u>STATEMENT OF FACTS</u>

### *McGraw-Hill and Standard & Poor's*

As discussed in detail in Defendants' Opening Brief, Defendant McGraw-Hill is a leading global information services provider serving the financial services, education and business information markets with a wide range of information products and services.  (Opening Brief at 4).  The Company has three principal divisions: Education, Financial Services and Information & Media.  McGraw-Hill's Financial Services division, which is known as Standard & Poor's ("S&P"), provides independent credit ratings, indices, risk evaluation, investment research and data.  Defendant Harold McGraw III ("McGraw") is President and Chief Executive Officer of McGraw-Hill and Chairman of McGraw-Hill's Board of Directors.  (SAC ¶ 20).  Defendant Robert J. Bahash ("Bahash") is Executive Vice President and Chief Financial Officer of McGraw-Hill.  (SAC ¶ 21).

Historically, more than half of McGraw-Hill's revenue is generated by McGraw-Hill's Education and Information & Media divisions.  *See* Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss With Prejudice the SAC ("Reply Brief"), at 14.  Both the SAC and the Proposed TAC, however, are focused exclusively on one unit within McGraw-Hill's *third* division, Financial Services, which provides credit ratings on a broad range of obligors and debt securities (*i.e.,* "Standard & Poor's Credit Market Services").   Within that unit, the complaints focus exclusively on S&P's ratings of certain structured finance securities, namely residential mortgage-backed securities ("RMBS") and collateralized debt obligations

("CDOs").[3]  McGraw-Hill's Financial Services segment is, in fact, far larger than S&P's ratings business and S&P's ratings business covers far more securities than RMBS and CDOs.  (Reply Brief at 14).

***Procedural Background***

       This action was commenced on August 28, 2007 with the filing of a complaint in the United States District Court for the District of Columbia against Bahash.  (D.C. Dkt. 1).  Among other claims, that complaint alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all arising out of alleged misstatements or omissions in McGraw-Hill's public filings and other public statements.  The initial complaint was brought on behalf of a purported class of investors who purchased McGraw-Hill common stock between July 25, 2006 and August 15, 2007.

       On February 11, 2008, the District of Columbia District Court entered an order appointing Lead Plaintiff and granted Lead Plaintiff leave to file an amended complaint.  (D.C. Dkt. 18).  The Consolidated Class Action Complaint ("First Amended Complaint" or "FAC") was filed on May 7, 2008, adding McGraw-Hill and McGraw as additional defendants and extending the class period to March 11, 2008.  (D.C. Dkt. 21).

       On June 18, 2008, the case was transferred to this Court.  Lead Plaintiff then obtained Defendants' consent to file a third pleading, leading to the filing of "Lead Plaintiff's Unopposed Motion to Establish a Briefing Schedule on Amended Consolidated Class Action Complaint" on August 29, 2008).  (Dkt. 8).  Pursuant to the Scheduling Order, entered September 19, 2008, Lead Plaintiff's Second Amended Complaint was to be filed on November 3, 2008.

---

[3]  S&P's credit ratings reflect S&P's opinion as to the creditworthiness of the debt instrument in terms of the likelihood that principal and interest will be timely paid in accordance with the terms of the security. (SAC ¶ 66, SEC Summary Report of Issues Identified in the Commission Staff's Examinations of Select Credit Rating Agencies, SAC Ex. D, at 7).

On October 24, 2008, Lead Plaintiff filed a "Motion to Continue Briefing Schedule on Amended Consolidated Class Action Complaint." (Dkt. 18). In this motion, Lead Plaintiff sought an additional 30 to 60 days to file the Second Amended Complaint. One of the reasons Lead Plaintiff cited for the requested extension was that it needed additional time to investigate its claims before filing the Second Amended Complaint. On November 3, 2008, this Court granted Lead Plaintiff a 30-day extension for this filing. (Dkt. 21).

Lead Plaintiff thereafter filed the Second Amended Complaint (the third complaint to be filed in this case) on December 3, 2008, over 15 months after this action was commenced. As did its predecessor pleadings, the currently operative SAC asserts claims under Sections 10(b) and 20(a) of the Exchange Act against Defendants on the basis of allegedly "false and misleading statements regarding McGraw-Hill's true financial circumstances and future business prospects." (SAC ¶ 3). Extending the class period yet again, Plaintiffs in the SAC purport to represent a putative class of investors who purchased McGraw-Hill stock between October 21, 2004 and March 11, 2008. (SAC ¶ 1). Pursuant to this Court's Order dated November 3, 2008, Defendants filed their Motion to Dismiss the SAC and supporting memorandum of law on February 3, 2009, Plaintiffs filed a brief opposing Defendants' motion to dismiss on April 3, 2009 ("Pls. Opp."), and Defendants filed their reply brief in support of their motion to dismiss on May 4, 2009. (Dkt. 24-29).

Defendants' Motion to Dismiss the SAC identified three independently dispositive defects in the SAC. First, the SAC fails to plead facts giving rise to a strong inference of scienter because Plaintiffs did not, and cannot, plead any facts even suggesting that any of the Defendants were aware of information that conflicted with their public statements, let alone that they had anything to gain from the alleged fraud. (Opening Brief at 21-35). Second, the SAC fails adequately to allege loss causation both because: (i) Plaintiffs have not pleaded, and cannot plead, facts sufficient to support the inference that fraud, rather than an intervening marketwide meltdown and significant decline in structured finance transactions, led to the decline in McGraw-Hill's stock price; and (ii) Plaintiffs fail to identify any "corrective disclosure" that re-

vealed the "truth" of a prior alleged misstatement and caused the decline in McGraw-Hill's stock price.  (Opening Brief at 35-48).  Third, the SAC fails to identify *which* of McGraw-Hill's statements were allegedly misleading or *why* such statements can be so characterized; instead, it simply quotes lengthy passages from McGraw-Hill's public filings during the class period.  (Opening Brief at 6-21).[4]

### The Proposed TAC

On May 21, 2010 — ***more than 15 months*** after Defendants filed their Motion to Dismiss the SAC — Lead Plaintiff filed the instant Motion, attaching a Proposed Third Amended Complaint (which would be the fourth complaint to be filed in this case).  The theory of the case expounded in the Proposed TAC is identical to that of the SAC and its predecessor pleadings: that Defendants violated Sections 10(b) and 20(a) of the Exchange Act by making allegedly "false and misleading statements regarding McGraw-Hill's true financial circumstances and future business prospects."[5]  (Proposed TAC ¶ 3).  Thus, in similar fashion to the SAC, Plaintiffs allege in the Proposed TAC that virtually every public statement by the Defendants during the Class Period was false or misleading, including statements made by the Defendants in McGraw-Hill's earnings announcements, public SEC filings, earnings conference calls, and various other conferences in which McGraw and Bahash participated.  (Proposed TAC ¶¶ 252-381).  As noted above, the Proposed TAC, as did the SAC, expressly disclaims that its claims are "about the substance of S&P's actual ratings" or "an attack on the veracity or reasonableness of [S&P's ratings] opinions."  (Proposed TAC ¶ 3; *see also id*. ¶ 214).

---

[4]  Defendants' Opening Brief also addresses Plaintiffs' failure to plead claims under Section 20(a) of the Exchange Act, claims that fall with the force of the Section 10(b) claims.  *See* Opening Brief at 48-49.

[5]  The putative class period is also the same in both the SAC and the Proposed TAC .  *See* SAC ¶ 1; Proposed TAC ¶ 1.

Nonetheless, in an attempt to bolster the SAC's deficient scienter allegations, the newly proposed pleading incorporates a large number of additional documents, the vast majority of which are drawn from the PSI hearing exhibits, regarding the *very subjects* that Plaintiffs have repeatedly stressed this case is not about.  (Motion at 4; *see also id.* at 3; Proposed TAC ¶ 251).  The Proposed TAC also includes a number of proposed changes that have no connection to the recently released PSI exhibits.  First, the Proposed TAC purports to incorporate allegations from additional unidentified "confidential witnesses," bringing the total number of confidential witnesses to 12.  (Proposed TAC ¶¶ 46-48, 166, 170, 190-94, 199).  Second, the Proposed TAC adds references to three additional "corrective disclosures."  (Proposed TAC ¶¶ 342-46, 401).  *See also* Opening Brief at 35-48; Reply Brief at 19-24.  None of these proposed additional allegations remedy the defects of the SAC.

## ARGUMENT

## I.    LEAVE TO AMEND SHOULD BE DENIED ON THE GROUNDS OF FUTILITY

As this Court has held, it is appropriate to deny a plaintiff leave to amend a complaint if the proposed amendment would be futile and the amended complaint would not survive a motion to dismiss.  *See Fields* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 626180, at *4 (S.D.N.Y. Mar. 30, 2004) (Stein, J.); Fed. R. Civ. P. 15(a).  *See also Fielding* v. *Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (motion to amend properly denied when amendment would be futile); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("[W]here amendment would be futile, denial of leave to amend is proper.").  As shown below, the Proposed TAC, like the SAC, falls far short of pleading securities fraud with the particularity required by the PSLRA and Fed. R. Civ. P. 9(b).  Accordingly, Plaintiffs' request for leave to file their fourth complaint in this action should be denied.

### A.    The Proposed TAC Fails to Allege Any Facts Giving Rise to a Strong Inference of Scienter

Plaintiffs repeatedly state that the Proposed TAC "describes substantial and material recently revealed evidence supporting . . . Plaintiff's existing scienter allegations."  (Motion

at 3; *see also id.* at 4; Proposed TAC ¶ 251). For the reasons set forth in Defendants' briefs on their pending Motion to Dismiss the SAC, Plaintiffs' "existing scienter allegations" fall far short from raising any inference, let alone the requisite strong inference, that the Defendants' acted with the required state of mind. *See* Opening Brief at 21-35; Reply Brief at 9-19. The Proposed TAC fails as well.

### 1.    The Proposed TAC Fails to Allege Any Plausible Motive for Defendants to Have Engaged in the Alleged Fraud

As in the SAC, Plaintiffs' only attempt to plead motive in the Proposed TAC is by way of their conclusory and insufficient allegation — repeated verbatim from the SAC — that Defendants were motivated to bolster McGraw-Hill's "short term financial results" and to "preserve market share and not lose deals to its competitors." (Proposed TAC ¶¶ 5, 96, 256; *see also* SAC ¶¶ 5, 100, 172). As established in Defendants' Opening Brief, such generalized motives which are "common to most corporate officers, such as the desire of the corporation to appear profitable . . . do not constitute 'motive'" under the securities laws. *ECA* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *see also Epirus Capital Management, LLC* v. *Citigroup Inc.*, 2010 WL 1779348, at *6 (S.D.N.Y. Apr. 28, 2010) (Stein, J.) (plaintiffs' motive allegations were insufficient where they failed to allege any "motive that is different from the motives that all corporate officers and directors have — that is, a desire for the company to remain profitable and to profit personally as a result of the company's profitability").

In opposing Defendants' Motion to Dismiss, Plaintiffs advanced the theory that Defendants had the "dual motive of enhancing short-term profits and protecting its incessantly cultivated 'gold standard' reputation." (Pls. Opp. at 34). Yet, the Proposed TAC continues to provide absolutely no explanation as to why McGraw-Hill would sacrifice its reputation in furtherance of the motive of bolstering its short-term profits in one area of one division of McGraw-Hill. As discussed in Defendants' Reply Brief in support of their Motion to Dismiss the SAC, Plaintiffs' motive allegations must be viewed through the lens of Plaintiffs' alleged scheme. *See*

Reply Brief at 10-11.  Because the obvious futility of the scheme Plaintiffs hypothesize is plain, the motive allegations in the Proposed TAC — as in the SAC — are entitled to no weight.

      **2.     The Proposed TAC Fails to Allege Facts Demonstrating that Any of the Defendants Acted With Conscious Misbehavior or Recklessness**

      To plead recklessness, Plaintiffs were required to allege facts demonstrating that Defendants' conduct transcended "merely enhanced negligence" and to "specifically alleg[e] defendants' knowledge of the facts or access to information contradicting their public statements." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005) (Stein, J.) (citation and internal quotation marks omitted).  "'[W]here plaintiffs contend [that] defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.'"  *Teamsters Local 445 Freight Division Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).  Moreover, where, as here, the proposed complaint fails to allege that the defendants had any motive to defraud, the "strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater" to plead a strong inference of scienter.  *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation and internal quotation marks omitted).  None of the newly proffered allegations of the Proposed TAC are sufficient to clear this high pleading hurdle.

      **(a)     Plaintiffs' Proposed New Exhibits Do Not Support an Inference of Scienter**

      Plaintiffs' Proposed TAC, much like their SAC, fails to identify any report or statement made to the Defendants that contained information contradicting any of their public statements.  Indeed, of the 45 new exhibits that Plaintiffs attach to the Proposed TAC, there are only three that even *reference* a McGraw-Hill officer or employee.  *See* Proposed TAC Exs. 4, 21, 50.  Moreover, even with respect to those three exhibits, not a single one raises any inference that McGraw or Bahash — or any other McGraw-Hill executive whose intent can be imputed to the corporation — knew or had access to information that contradicted their public statements or had any knowledge of the alleged issues Plaintiffs cite with regard to S&P's rating and sur-

veilling of RMBS and CDO transactions. *See Dynex*, 531 F.3d at 195, 197 (a plaintiff can plead scienter as to a corporate defendant only if the pleaded facts raise a strong inference that some corporate officer "whose intent could be imputed to the corporation" and was "responsible for the statements made to investors" acted with the requisite scienter).

The first of these newly proffered documents is an e-mail from an employee in the Servicer Evaluations department of S&P's Structured Finance division to an external party, dated March 18, 2007, in which the S&P employee states that:

> [T]omorrow morning key members of the RMBS rating division are scheduled to make a presentation to Terry McGraw CEO of McGraw-Hill Companies and his executive committee on the entire subprime situation and how we rated the deals and are preparing to deal with the fallout (downgrades). Yours truly is not among the anointed [sic] for that dubious 15 minutes of fame. (Proposed TAC Ex. 4; *see also* Proposed TAC ¶ 148).

In reliance on this passage, Plaintiffs allege in the Proposed TAC that "[a]t the Company's highest levels, it was surely no secret within S&P that there were immense problems with the Company's ratings of RMBS and CDOs tied to the subprime market." (Proposed TAC ¶ 148). Yet, notably absent from Plaintiffs' newly proposed complaint are any factual allegations specifying how this employee — who, as the document itself makes clear, did not attend any meeting with the executive committee — is in a position to say anything about what information McGraw and the rest of the executive committee received at this meeting, let alone whether the executive committee received any information that contradicted any public statement by McGraw-Hill. Indeed, the speaker does not even confirm that the meeting ever in fact took place. Lacking any of the requisite detail, Plaintiffs' conclusory allegations based on this document fail to plead that the Individual Defendants — or McGraw-Hill — acted with the requisite fraudulent intent. *See, e.g., Kinsey* v. *Cendant Corp.*, 2005 WL 1907678, at *5 (S.D.N.Y. Aug. 10, 2005) (Sweet, J.) ("[C]onclusory allegations that a corporate officer had 'access' to information that contradicted the alleged misstatements are insufficient to raise a strong inference of recklessness."). Indeed, the document on its face merely indicates that in March 2007 a meeting of certain McGraw-Hill

-11-

executives may have taken place and may have addressed issues concerning the subprime mort-gage market and S&P's responses thereto — topics one certainly would not be surprised to learn were being discussed in the face of growing public reports about poor performance of subprime mortgages.

The second of these documents (and the only other document that references ei-ther of the Individual Defendants) contains the Minutes of the Regular Meeting of the McGraw-Hill Board of Directors held on December 5, 2007 — three months before the end of the two and half year class period and *after* four of the proposed alleged "corrective disclosures" here. *See* Proposed TAC Ex. 21. The Minutes state that McGraw "noted the market would reject ratings that were too volatile because ratings are supposed to be less volatile than market prices." (Pro-posed TAC Ex. 21; *see also* Proposed TAC ¶ 106). Nothing in this document suggests in any way that McGraw had knowledge of any contemporaneous facts that contradicted his public statements. Moreover, this statement, which is merely an observation as to how the market for credit ratings operates, fails to raise any inference that McGraw knew of any of the alleged prob-lems with S&P's RMBS and CDO ratings models and methodologies or its surveillance proc-esses. For example, the Minutes note that the President of S&P, Deven Sharma (Proposed TAC ¶ 39), joined the Board meeting at McGraw's request "to review the voluntary actions that are currently being considered by S&P in response to the subprime situation." (Proposed TAC Ex. 21). Sharma is not reported to have raised any of the issues alleged in the Proposed TAC at that meeting, but to have instead assured the Board that "S&P has a strong record demonstrating that defaults over time are consistent with S&P's rating expectations" and that "S&P continues to evolve and enhance its governance and analytical processes in response to changing conditions." (*Id.*) If these statements are probative of anything, it is the *opposite* of an inference of scienter.

The final exhibit to the Proposed TAC that references any McGraw-Hill em-ployee is a November 2007 e-mail chain — also written *after* four of the proposed alleged "cor-rective disclosures" here — between Donald Rubin, a Senior Vice-President in McGraw-Hill's Investor Relations department, and certain S&P employees. *See* Proposed TAC Ex. 50; *see also*

-12-

Proposed TAC ¶¶ 237-239. In the e-mail chain, Rubin forwards a securities analyst's question regarding one of S&P's ratings models to the then-Head of Ratings at S&P and later includes a prepared draft response. The draft response includes, *inter alia*, a reference to the adjustments made to S&P's RMBS ratings model ("LEVELS") in July 2007. Plaintiffs curiously conclude that this was a "false and misleading response" because it "omits material information that the Company deliberately did not update its LEVELS model." (Proposed TAC ¶ 239). Apparently Plaintiffs appear to be questioning whether the July 2007 model adjustments referenced were actually made. Yet, Plaintiffs later seek to characterize reports of the very same July 2007 adjustments as alleged "corrective disclosures" that revealed the truth about S&P's ratings models to the market. (Proposed TAC ¶¶ 342-46). Plaintiffs do not and cannot explain how this statement both "misleads" and "reveals the truth" at the same time. In any event this e-mail chain in no way evidences that Rubin, or any other McGraw-Hill or S&P employee, had any doubt as to the accuracy of the draft response — nor does it even confirm that the response was delivered to investors. Accordingly, this document too falls far short of adding anything to Plaintiffs' effort to plead facts regarding the state of mind of McGraw-Hill or the Individual Defendants.

        **(b)**      **The Statements of Plaintiffs' Proposed New "Confidential Witnesses" Do Not Support an Inference of Scienter**

        As noted above, Plaintiffs also claim to have discovered three additional "confidential witnesses." *See* Proposed TAC ¶¶ 46-48, 166, 170, 190-94, 199. Just as with the confidential sources first referenced in the SAC, however, Plaintiffs fail to allege that any of these confidential witnesses had any contact, either direct or indirect, with McGraw, Bahash or any other persons whose intent may be imputed to McGraw-Hill. *See* Opening Brief at 27-30; *see also, e.g., In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008) (Holwell, J.) (allegations based on confidential sources were insufficient to establish scienter where there were no facts to establish that the sources would have known what information was communicated to senior executives). Moreover, only one of these confidential witnesses is alleged to have indirect knowledge of McGraw (it does not explain how) and that employee — who allegedly worked in

various S&P "sales positions" — states only that s/he has information "concerning how McGraw-Hill set internal budgets" and that "McGraw pushed revenues." (Proposed TAC ¶ 47). Even if one could accept this allegation as true (notwithstanding the lack of any of the indicia of reliability required to accept a confidential witness statement as true), Plaintiffs do not and cannot explain how a universal corporate motivation to increase revenue constitutes scienter. Plaintiffs' proposed additional "confidential witness" allegations simply do not remedy Plaintiffs' pleading deficiencies.

> **(c)    Plaintiffs' Attempt to Bolster Their "Core Operations" Theory Does Not Support an Inference of Scienter**

In apparent support of Plaintiffs' "core operations" theory of scienter, raised for the first time in Plaintiffs' brief in opposition to Defendants' Motion to Dismiss the SAC, the Proposed TAC also newly alleges that: "The explosive growth in Structured Finance made it the key driver for McGraw-Hill's financials during the Class Period." (Proposed TAC ¶ 102). Not only do Plaintiffs fail to provide any factual support for this allegation, it is directly contradicted by other allegations of the Proposed TAC that demonstrate that the revenue for the ratings area that is the primary focus of the Proposed TAC (*i.e.,* S&P's RMBS Group) accounted for less than 25% of S&P's revenue and thus, only approximately 11% of McGraw-Hill's overall revenue during the Class Period. (Reply Brief at 14; Proposed TAC ¶¶ 163, 209). Thus, despite Plaintiffs' conclusory claims to the contrary, to the extent such an allegation may be relevant at all to pleading scienter,[6] it cannot be inferred that S&P's activities in rating and surveilling structured finance securities are the "core operations" of *McGraw-Hill. See* Reply Brief at 13-16.

---

[6]   As demonstrated in Defendants' Reply Brief (at 13), as a general proposition, the core operations theory contravenes the express directives of the PSLRA that plaintiffs "state with particularity facts giving rise to a strong inference" of scienter and, as such, it is no longer viable following the enactment of the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2); *see also Rozenzweig* v. *Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) (plaintiffs' allegations based on inference that defendants knew information regarding company's core business are "insufficient under the PSLRA's rigorous pleading standards").

       \*        \*        \*        \*        \*        \*

Because the proposed new allegations contained in the Proposed TAC would add nothing to those in the SAC, Plaintiffs' newly proposed pleading would be subject to dismissal, just as the SAC should be dismissed, for failure to plead facts giving rise to a strong inference of scienter. Accordingly, granting leave to amend in these circumstances would be futile and Plaintiffs' request should be denied.

**B.  The Proposed TAC Fails Adequately to Allege Loss Causation**

Although Plaintiffs describe their proposed amendment as being driven by "the recently revealed additional evidence . . . made public . . . on April 23, 2010" (Motion at 5-6), a close look at the Proposed TAC reveals that Plaintiffs also seek to amend their pleading so as to change their loss causation allegations for reasons having nothing to do with "recently revealed evidence." Specifically, Plaintiffs seek to add references to three additional alleged "corrective disclosures" between July 10-12, 2007 that happen to coincide with drops in McGraw-Hill's stock price. (Proposed TAC ¶¶ 342-46, 401). But, these new allegations do nothing to address the dispositive fact that McGraw-Hill's stock price actually declined *less* from its peak during the putative class period than the stock prices of its two principal ratings agency competitors over that same period, as demand for structured finance ratings declined during a severe marketwide economic downturn. (Opening Brief at 35-41). Nor do the new allegations identify the requisite causal connection between the alleged fraud and the alleged loss. (*Id*. at 41-47). If anything, the fact that Plaintiffs have again shifted their position on the dates of supposed corrective disclosures further undermines any inference that any disclosure or disclosures ever revealed the truth of an alleged fraud.

**1.  The Proposed TAC Fails to Address the Marketwide Downturn**

A plaintiff seeking to allege loss causation bears the burden of pleading facts sufficient, if proved, to establish that it was the alleged fraud, and not marketwide or other external factors, that to some ascertainable extent caused the plaintiff's loss. As set forth in Defendants' briefs in support of their Motion to Dismiss the SAC (*see* Opening Brief at 35-41; Reply Brief at

19-23), the decline in McGraw-Hill's stock price corresponded with a devastating marketwide downturn that put considerable pressure on the stock prices of all of the ratings agencies and even led to the complete failure of venerable financial institutions. The magnitude of this "Great Recession" is even clearer now than it was at the time of the briefing on the Motion to Dismiss. Still, Plaintiffs fail to acknowledge in the Proposed TAC the role of the downturn in the decline of McGraw-Hill's stock price. This failure runs afoul of the standard set forth in *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), and its progeny, which requires a plaintiff alleging securities fraud to plead facts sufficient, if proved, to attribute at least some ascertainable portion of the alleged loss to the fraud rather than non-fraud forces.

In opposing Defendants' Motion to Dismiss the SAC on these grounds, Plaintiffs sought to skirt the governing *Lentell* standard by advancing the far-fetched theory that McGraw-Hill "played a significant role in creating the current economic environment," (Pls. Opp. at 44-45), implying that Plaintiffs' alleged losses as a result of that marketwide downturn could somehow be attributed to false statements Defendants allegedly made about McGraw-Hill itself. In reply, Defendants pointed out that this bizarre theory appeared nowhere in the SAC. (Reply Brief at 20-21). Tellingly, it is also absent from the Proposed TAC. In other words, Plaintiffs have walked away from their own theory of loss causation. And no wonder. If accepted, that theory would not only require Plaintiffs to prove that McGraw-Hill somehow caused the collapse of the global economy by making misleading statements about McGraw-Hill itself; it would also require them to prove that some ascertainable proportion of their losses could be attributed to that imaginary fraud.

Having offered a perplexing theory — a theory they could not hope to prove — in an effort to save the SAC from dismissal, Plaintiffs now abandon that theory. The Proposed TAC, like the SAC, is thus devoid of loss causation allegations that address the marketwide collapse. Because the Proposed TAC, like the SAC, fails to plead facts sufficient to exclude non-fraud explanations for Plaintiffs' alleged loss as required by *Lentell*, granting leave to amend would be futile.

2.     **In the Proposed TAC, Plaintiffs Again Shift Positions on the Alleged Corrective Disclosures, Further Undermining Any Inference That a Fraud Was Revealed**

The absence of the requisite connection between any alleged fraud and Plaintiffs' alleged losses is made apparent by Plaintiffs' ongoing struggle to state when the alleged fraud was revealed. One would suppose that if an investor in a company's stock had been defrauded, and subsequently learned the truth of that fraud, that the event or events that revealed that truth would be well known such that the investor could allege those events in a single attempt (or at least by the third attempt). Here, however, Plaintiffs have proposed new and different corrective disclosures in each of the four iterations of their pleading, changing their position even as to the date when they began to learn of the alleged fraud.

In the first complaint, filed on August 28, 2007, Plaintiffs alleged that investors were "shocked" at an alleged corrective disclosure of the fraud on August 16, 2007. (¶ 29). Plaintiffs at that time alleged a single supposedly corrective disclosure on August 16, and no prior or subsequent corrective disclosures. In the amended complaint filed on May 7, 2008, Plaintiffs continued to allege that information about the fraud was first revealed on August 16, 2007, but also alleged a series of partial corrective disclosures after August 16, 2007. (¶ 158, *et seq.*). In the SAC, filed on December 3, 2008, Plaintiffs highlighted new and different dates and disclosures as the occasions of supposedly corrective information reaching the market, but still alleged that the truth of the fraud was first revealed on August 16, 2007. Now, entirely inconsistent with their prior pleading, Plaintiffs say for the first time in the Proposed TAC that the truth of the alleged fraud began to be revealed *before* August 16, 2007 (Proposed TAC ¶ 401).[7] In other words, Plaintiffs used to say they knew nothing about the alleged fraud before August 16, 2007, but now they take the opposite position and say they actually did know something about

---

[7] Plaintiffs' shift apparently reflects a tactical effort to avoid the implications of the fact that a great deal of the decline in McGraw-Hill's stock price took place before the first corrective disclosure alleged in the SAC. *See* Opening Brief at 46-48.

the fraud before that date. This is not pleading; this is desperate flailing. Plaintiffs' contortions are a transparent effort to salvage the unsalvageable and serve only to highlight the absence of any real corrective disclosures.

Specifically, in the Proposed TAC, Plaintiffs add references to four alleged corrective disclosures over a three day period in July 2007. *See* Proposed TAC ¶¶ 342-45. Plaintiffs allege that "[b]etween July 10-12, 2007, partial revelations reached the market" when "[v]arious articles published by Reuters, The Wall Street Journal, and the Financial Times pointed to a cloud of uncertainty around the Company, calling into question S&P's modeling abilities and surveillance, among other things." (Proposed TAC ¶ 401).[8] One need look no further than the explicit allegations of the Proposed TAC itself to find that such articles were not corrective disclosures of any alleged fraud. Plaintiffs repeatedly make clear that the alleged fraud in this case is *not* about "the substance of S&P's actual ratings" or "the veracity or reasonableness of [S&P's ratings] opinions." (Proposed TAC ¶ 3). *See also* Proposed TAC ¶ 214 ("[T]his case is not based upon S&P's failure to monitor its rated RMBS and CDOs, nor is it based upon the Company's failed ratings models."). Plaintiffs simultaneously allege both that statements "calling into question S&P's modeling abilities and surveillance" were corrective disclosures and that those matters are not the subject of the alleged fraud. To say that these allegations fail to plead a causal link between the supposed fraud and any loss is an understatement — in fact, they specifically disclaim such a link.

---

[8]   Plaintiffs incorrectly characterize the news articles as "calling into question" S&P's surveillance of RMBS. However, the only mention of surveillance in these articles is a quotation from S&P that it had "been surveilling these [RMBS] transactions on a regular basis," and "monitoring market trends." *See* Proposed TAC ¶ 342. The articles thus did not refer to the quality of surveillance, but only stated that surveillance was being conducted. Even more egregious is Plaintiffs' assertion that these articles point to "a cloud of uncertainty around the Company" in general. The "cloud of uncertainty" referred to in the *Reuters* article — which is quoted over fifty pages before the loss causation section of the Proposed TAC — refers to uncertainty about the RMBS market rather than uncertainty about S&P. *See* Proposed TAC ¶ 342.

Taken on their own terms, the proposed new loss causation allegations add nothing to those in the SAC.  If anything, they serve only to undermine the allegations in the SAC — not only because Plaintiffs apparently felt the need to attempt to bolster the SAC's allegations, and not only because the Proposed TAC also fails to engage with the marketwide downturn as *Lentell* requires, but also because Plaintiffs themselves cannot stick to a single consistent story about when the truth of the alleged fraud was supposedly revealed.  Because the Proposed TAC would be subject to dismissal for failure to plead loss causation, just as the SAC should be dismissed on the same grounds, granting leave to amend would be futile.

**C.      The Proposed TAC Fails to Plead Any Actionable Misstatement or Omission**

The stated theory of Plaintiffs' securities fraud claim in the Proposed TAC — as in the SAC — is that Defendants made allegedly "false and misleading statements regarding McGraw-Hill's true financial circumstances and future business prospects."  (Proposed TAC ¶ 3; *see also* SAC ¶ 3).  In a strained effort to justify the present Motion and their proposed new exhibits, Plaintiffs nevertheless attempt to recast their own theory of the case in their Motion, arguing, without citation, that both the SAC and the Proposed TAC allege that Defendants "made numerous false and misleading statements to investors concerning the Company's financial performance as well as the quality of ratings and surveillance."  (Motion at 2; *see also id.* at 3).  Plaintiffs do so notwithstanding that the overwhelming majority of McGraw-Hill's public statements cited in the Proposed TAC consist of nothing more than McGraw-Hill's accurate reporting of its financial results and the market for structured finance products.  *See* Proposed TAC ¶¶ 252-381.  Furthermore, to the limited extent that S&P's ratings are even mentioned in the cited McGraw-Hill statements, Plaintiffs either provide no factual basis for alleging that such statements were false or the statements are non-actionable under the securities laws.  *See* Opening Brief at 6-21.[9]

---

[9]   *See, e.g.,* Proposed TAC ¶ 259 (Plaintiffs provide no factual basis for asserting that statement that

Footnote continued on next page.

Plaintiffs' Proposed TAC, which largely incorporates the same block quotations from McGraw-Hill's earnings announcements, public filings and conference calls as they did in their prior pleading followed by a generic laundry list of supposed "true facts" (*see, e.g.,* Proposed TAC ¶ 256), remains a deficient puzzle pleading. *See* Opening Brief at 7-12; Reply Brief at 3-4. Plaintiffs' attempts to mask their puzzle-pleading approach by repeatedly incorporating this generic list of purported "true facts" by reference, rather than repeating it verbatim after each set of block quotations, cannot overcome the inefficacy of this pleading approach. *See, e.g.,* Proposed TAC ¶ 261. Plaintiffs' inclusion of additional, seemingly more specific, purported "true facts" after each set of block quotations that they assert Defendants concealed is also unavailing. Not only are the majority of these newly-asserted purported "true facts" little more than reworded versions of the generic laundry list of "true facts" that was first incorporated in the SAC, but Plaintiffs fail to provide any connection between many of these "true facts" and McGraw-Hill's actual public statements. *See, e.g.,* Proposed TAC ¶¶ 289, 308, 317. As described in detail in Defendants' prior briefing, this approach to pleading is wholly insufficient to satisfy the heightened pleading requirements of both Fed. R. Civ. P. 9(b) and the PSLRA. *See* Opening Brief at 7-12; Reply Brief at 3-4.

---

Footnote continued from previous page.

"[t]he Financial Services Segment competes domestically and internationally on the basis of a number of factors, including quality of ratings" was false); Proposed TAC ¶ 271, 298 (statement that "[w]e [S&P] believe that we are second to none in the scope and quality of our staff and the information we provide to the structured finance market" is a non-actionable statement of opinion because Plaintiffs have not adequately plead that the speaker did not subjectively hold the opinion expressed); Proposed TAC ¶¶ 271, 298 (statement that "[S&P's] strategy is focused on leveraging [S&P's] brand; our overwhelming recognition for quality, independence and objectivity . . ." is a non-actionable statement expressing McGraw-Hill's aspirational corporate goals); Proposed TAC ¶ 377 (statements that "S&P is taking steps to ensure that our ratings models, processes, and analytical talent continue to be of the highest quality" and is "establish[ing] a Model Oversight Committee within the Quantitative Analytics Group . . . to assess and validate the quality of models and tools" are declarations of intention, not actionable statements of existing fact).

Moreover, as with the SAC, Plaintiffs' Proposed TAC continues to include in its 141-pages of allegedly "misleading" statements, statements that simply cannot give rise to liability under the federal securities laws. For example, it is axiomatic that accurate statements of past results cannot serve as the basis for a securities fraud complaint because such statements are not guarantees that such results will continue in the future. *See* Opening Brief at 13-15; Reply Brief at 7-8. Thus, statements in McGraw-Hill's earnings announcements such as "Standard & Poor's completed the best year in its history with a record fourth quarter performance" (Proposed TAC ¶¶ 257, 261), or that S&P's Financial Services division experienced "[a] strong finish to an outstanding year" (Proposed TAC ¶¶ 318, 324), are not actionable. Similarly, to the extent Plaintiffs base their claims in the Proposed TAC on McGraw-Hill's forward-looking statements regarding its forecasts for the market, earnings estimates, or the like, these statements are entitled to protection under both prongs of the PSLRA statutory "safe harbor." *See* Opening Brief at 15-17; Reply Brief at 9; *see also, e.g.,* Proposed TAC ¶¶ 347, 354 (challenging McGraw-Hill's forecast of earnings); Proposed TAC ¶¶ 380, 381 (challenging McGraw-Hill's prediction of revenue growth in 2008). McGraw-Hill's public statements regarding its aspirational corporate goals and integrity are also not actionable misstatements under the federal securities laws. *See* Opening Brief at 17-18; Reply Brief at 5-7; *see also, e.g.,* Proposed TAC ¶¶ 291, 296 ("Respect for the integrity of information is part of our company's makeup."); *id.* ¶¶ 298, 306 (referring to McGraw-Hill's "overwhelming recognition for quality, independence and objectivity").

In short, Plaintiffs' Proposed TAC does little, if anything, to remedy the pleading deficiencies of the SAC with respect to the basic requirement that Plaintiffs identify, with specificity, which statements serve the basis for their claims and why such statements were allegedly false or misleading when made. *See* Opening Brief at 6-21.[10]

---

[10]   Plaintiffs also cite one new statement in the Proposed TAC that they contend was "materially false": S&P's Ratings Services October 2005 Code of Conduct "and all Class Period versions thereof." (Pro-

Footnote continued on next page.

\*        \*        \*        \*        \*        \*

Because none of the supplemental allegations in the Proposed TAC cure the deficiencies of the SAC, granting leave to amend would be futile. The fact that Plaintiffs are unable to state a viable securities fraud claim after *four* attempts at doing so "leads to the inevitable conclusion that they *cannot* do so." *In re Champion Enterprises, Inc. Sec. Litig.*, 145 F. Supp. 2d 871, 875 (E.D. Mich. 2001), *aff'd*, *Miller* v. *Champion Enterprises, Inc.*, 346 F.3d 660 (6th Cir. 2003) (emphasis in original). Plaintiffs' request for leave to amend should accordingly be denied.

---

Footnote continued from previous page.

posed TAC ¶ 389). Yet, S&P's Ratings Services Code of Conduct is a classic example of a statement expressing aspirational corporate goals that cannot give rise to securities fraud liability. *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 397 (S.D.N.Y. 2006) (Karas, J.) (actionable statement "'must be one of existing fact, and not merely a[] . . . declaration of intention'") (quoting *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at \*4 (S.D.N.Y. Nov. 25, 2003)). *See also ECA,* 553 F.3d at 206 (statements by bank regarding its standard-setting reputation for integrity were "so general that a reasonable investor would not depend on [them] as a guarantee that [the bank] would never take a step that might adversely affect its reputation"); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 360 (S.D.N.Y. 2008) (Holwell, J.) (rejecting allegation that company's description of its compliance program was false or misleading because such a finding would mean that "any company that has a compliance program and discloses that program in even the most austere terms would be required, *ipso facto,* to disclose any possible deviation that came to its attention"); *Andropolis* v. *Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 686 (D. Colo. 2007) ("[I]t simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all . . . ."). Moreover, even if S&P's Ratings Services Code of Conduct could form the basis of a securities fraud claim, the Proposed TAC fails to plead with particularity the "what, when . . . and how of the alleged fraud." *Garber* v. *Legg Mason, Inc.*, 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2008) (Chin, J.) (securities fraud allegations must "set forth the who, what, when, where and how of the alleged fraud") (citation and internal quotation marks omitted). *See also* Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1) (requiring plaintiffs in securities fraud actions to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading"). Rather than specify with particularity the reasons Plaintiffs maintain the statements in S&P's Ratings Service Code of Conduct were supposedly false or misleading *when made* in October 2005, the Proposed TAC states only that "the Defendants pushed a fraudulent scheme that trampled over the code of conduct." (Proposed TAC ¶ 389). This is patently insufficient to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA.

## II.     ALLOWING THE FILING OF THE PROPOSED TAC WOULD FRUSTRATE THE PURPOSE OF THE PSLRA

Although Federal Rule of Civil Procedure 15(a) generally takes a liberal approach to leave to amend, several courts have recognized the PSLRA's "unique impact of narrowing application of this standard in securities fraud cases." *California Public Employees' Retirement System* v. *Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004); *see also Miller* v. *Champion Enterprises, Inc.,* 346 F.3d 660, 692 (6th Cir. 2003); *In re NAHC, Inc., Sec. Litig.*, 306 F.3d 1314, 1332-33 (3d Cir. 2002); *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 236-37 (D.N.J. 2002).  The purpose of the PSLRA is to allow the Court to act as "a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis" and "[t]o encourage attorneys to use greater care in drafting their complaints." *Champion Enterprises*, 145 F. Supp. 2d at 873-74 (citing legislative history).  The PSLRA "could not achieve this purpose if plaintiffs were allowed to amend and amend until they got it right." *Id.* at 873; *see also Miller*, 346 F.3d at 692 ("[T]he purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA.").

Plaintiffs in this case have already had *three* opportunities to draft a complaint that pleads fraud with the requisite particularity.  All of the complaints that Plaintiffs have filed since this action was commenced nearly three years ago have nonetheless completely failed to meet the applicable pleading standards.  As demonstrated above, the Proposed TAC is no different in this regard.  Given the multiple attempts to draft an adequate complaint, and the various delaying tactics that Lead Plaintiff has used throughout this litigation, permitting leave to amend now would allow Plaintiffs "to make an end run around the requirements of the [PSLRA]." *Champion Enterprises*, 145 F. Supp. 2d at 877.  *See also* 6 Charles A. Wright *et al.*, *Federal Practice and Procedure* § 1487, at 643-45 (2d ed. 1990) ("[I]f the court determines that plaintiff has had sufficient opportunity to state a claim but has failed to do so, leave to amend may be denied.").

-23-

The fact that Plaintiffs contend that they seek to file the Proposed TAC "to incorporate the additional evidence revealed by the [PSI]" does not alter this conclusion. Plaintiffs themselves assert only that the PSI exhibits attached to the Proposed TAC provide additional support for their theory of scienter. (Motion at 3-5; *see also* Proposed TAC ¶ 251). Yet, as discussed in detail in Section I.A., *supra*, none of these documents reveal facts sufficient to raise *any* inference that Defendants acted with scienter, let alone the "strong inference" of scienter required under the PSLRA and Rule 9(b). Because Plaintiffs "have proffered no additional facts that would cure the pleading deficiencies of the [SAC]," it would frustrate Congress's objective in enacting the PSLRA to allow Plaintiffs to file the Proposed TAC. *Chubb*, 394 F.3d at 164.

Furthermore, with respect to efforts that Plaintiffs make in the Proposed TAC to overcome the SAC's deficient pleading of an actionable misstatement or omission and loss causation, Plaintiffs do not even purport to rely on the documents that were recently released by the PSI. Rather, the changes that Plaintiffs have made — *i.e.* limited attempts to identify specific statements that they contend are false or misleading and the identification of the July 2007 "corrective disclosures" — are direct responses to the arguments made in Defendants' Motion to Dismiss the SAC, filed in *March 2009*. *See* Opening Brief at 6-21, 35-48. Not only do Plaintiffs give no reason why they could not have addressed these defects prior to filing the SAC, at the very least they could have moved to file an amended complaint in March 2009 when Defendants filed their Motion to Dismiss the SAC on these grounds. Plaintiffs instead elected to file a brief opposing Defendants' Motion to Dismiss. Because many of the proposed changes involve allegations and claims that could have been made years ago, one can only conclude that Plaintiffs are now attempting to cure these defects in the SAC because they anticipate an adverse ruling from this Court on these issues.[11] That Plaintiffs should now attempt, some fifteen months later,

---

[11] For this reason as well, it is appropriate for the Court to deny leave to amend. *See PI, Inc.* v. *Quality Products, Inc.*, 907 F. Supp. 752, 764 (S.D.N.Y. 1995) ("When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims . . the court is free to deny leave to amend.");

Footnote continued on next page.

to remedy these issues is nothing more than gamesmanship that will only further waste the re-sources of this Court and Defendants.  This is precisely the sort of behavior that the PSLRA pro-scribes.  *See In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *4 (S.D.N.Y. Dec. 4, 2009) (Baer, J.) (denying plaintiffs' motion for reconsideration of dismissal of their securities fraud complaint where plaintiffs had already had at least two opportunities to amend their com-plaint and had failed to take advantage of "a further opportunity to amend their pleading after having had the opportunity to digest Defendants' arguments in favor of dismissal.").

## <u>CONCLUSION</u>

For the reasons set forth herein and in Defendants' prior submissions, Lead Plain-tiff's Motion for leave to file a further amended complaint in this action should be denied and this case should be dismissed with prejudice.


Dated: June 7, 2010                    Respectfully submitted,


                                        __/s/ Floyd Abrams_____
                                        Floyd Abrams (fabrams@cahill.com)
                                        Susan Buckley (sbuckley@cahill.com)
                                        Tammy L. Roy (troy@cahill.com)
                                        CAHILL GORDON & REINDEL LLP
                                        80 Pine Street
                                        New York, NY 10005
                                        Telephone:  212-701-3000
                                        Facsimile:  212-269-5420

                                        *Attorneys for Defendants The McGraw-Hill*
                                        *Companies, Inc., Harold McGraw III, and*
                                        *Robert J. Bahash*

---

Footnote continued from previous page.

*Turkenitz* v. *Metromotion, Inc.*, 1997 WL 773713, at *9 (S.D.N.Y. Dec. 12, 1997) ("Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier.") (citations and internal quotation marks omitted).