UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CLAUDE A. REESE, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>vs.<br><br>THE MCGRAW-HILL COMPANIES, INC., HAROLD MCGRAW III, and ROBERT J. BAHASH,<br><br>                     Defendants. | Civil Action No. 1:08-cv-07202-PKC<br><br>LEAD PLAINTIFF'S MOTION TO PARTIALLY MODIFY DISCOVERY STAY AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF |

Lead Plaintiff Boca Raton Firefighters and Police Pension Fund ("Plaintiff") respectfully moves this Court for entry of an Order partially modifying the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). As grounds therefore, Plaintiff states:

## INTRODUCTION

This securities fraud class action has been pending since August 28, 2007, and remains at the pleading stage. Following an April 23, 2010 hearing on "Wall Street and the Financial Crisis: The Role of Credit Rating Agencies," which was held by the United States Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs (the "Senate Subcommittee"), Plaintiff obtained leave of Court to file its Second Amended Consolidated Class Action Complaint for Securities Fraud (the "SAC"). The SAC, which incorporated many documents made public by the Senate Subcommittee that supported Plaintiff's existing allegations, was filed on July 1, 2010. Defendants The McGraw-Hill Companies, Inc. ("McGraw-Hill" or the "Company"), Harold McGraw III ("McGraw") and Robert J. Bahash ("Bahash") (collectively, "Defendants") moved to dismiss the SAC, and Defendants' motion to dismiss has been fully briefed since September 1, 2010. Despite more than three years of litigation, all formal discovery remains stayed by operation of the PSLRA.

The crux of this action is Defendants' false and misleading statements concerning McGraw-Hill's financial performance, the reasons behind its financial performance, and the quality and application of its ratings methodologies and surveillance services for structured finance transactions. As a result, the SAC contains great detail and many internal Company documents concerning McGraw-Hill's Standard & Poor's ("S&P") brand. During the Class Period and at all relevant times, McGraw-Hill reported its results in three segments: (1) Financial Services, which included S&P

Credit Market Services and S&P Investment Services (S&P indices); (2) McGraw-Hill Education; and (3) Information & Media.[1]

On September 12, 2011, McGraw-Hill revealed it would break itself up and split into two independent public companies, one focusing on capital and commodities markets and the other on education services. According to the Company, the split into "McGraw-Hill Markets" and "McGraw-Hill Education" has been unanimously approved by the Company's board of directors. The Company's historic division is part of a "Growth and Value Plan." Of relevance here, McGraw-Hill plans to create "two 'pure-play' companies with the scale, and the capital and cost structures to fully leverage their world-class franchises, iconic brands, and leading market positions." *See* Exh. A to the Declaration of Robert J. Robbins, Esq. (the "Robbins Decl."), which is attached hereto as Exhibit 1. The Company's split comes as S&P is reportedly under investigation by the United States Department of Justice regarding whether S&P improperly rated dozens of mortgage securities in the years leading up to the financial crisis. *See* Story, L., *U.S. Inquiry Is Said to Focus on S.&P. Ratings*, THE NEW YORK TIMES, Aug. 17, 2011, attached to the Robbins Decl. as Exh. B.

McGraw-Hill Markets will be led by defendant McGraw as Chairman, President, and Chief Executive Officer.[2] The newly formed company will include all aspects of S&P, which will account

---

[1] On November 15, 2010, McGraw-Hill announced it would split its Financial Services segment into two units: S&P and McGraw-Hill Financial. S&P is now comprised of the credit ratings business and McGraw-Hill Financial is comprised of the S&P 500 index and related products. With the separation, McGraw-Hill announced that defendant Bahash would step down as the Company's Chief Financial Officer to become president of McGraw-Hill's education unit, yielding the finance position to Jack Callahan, formerly the CFO at Dean Foods. The Company further revealed that Lou Eccleston, who joined the Company in 2008, would become head of the new McGraw-Hill Financial.

[2] It is telling that although defendant McGraw denies any scienter regarding the alleged false and misleading statements concerning S&P, he has been tapped to lead McGraw-Hill Markets.

for the lion's share of McGraw-Hill Markets' annual revenues.  Currently, "McGraw-Hill management is developing detailed separation plans, which will be subject to approval by the Board of Directors."  *See* Robbins Decl. at Exh. A.  The Company expects to complete the transaction by the end of 2012.  *See id.*

On top of restructuring S&P's operations and shuffling the Company's highest-ranking executives, including at least one defendant in this action, the divorce of McGraw-Hill into separate public companies poses a material threat to the preservation and maintenance of discoverable information.  Hamstrung by the PSLRA, Plaintiff is simply unable to ensure that all potentially responsive and discoverable evidence, information, and data are being and will be maintained.  The alleged Class Period is October 21, 2004 through March 11, 2008:  the relevant and discoverable materials in this action are already several years old.  Without a detailed understanding of the procedures Defendants are putting in place to, among other things, maintain and preserve both active and archived emails, back-up tapes, databases, hard drives, and the like, there can be no assurance that such materials will not be inadvertently lost or destroyed.  It is of critical importance to McGraw-Hill shareholders that those materials not suffer spoliation as a result of the Company's upcoming division.

In the absence of limited pre-trial discovery, it is impossible for Plaintiff to determine whether the dramatic shift in the Company's fundamental operations structure, accompanied by the change in employment of high-ranking executives, including defendant McGraw, will result in destruction of evidence, loss of data, or issues of successor liability.  While Defendants will no doubt argue they are taking appropriate steps to preserve documents, it is, simply, impossible for Plaintiff to determine what will survive McGraw-Hill's disintegration.  In light of the foregoing, Plaintiff seeks entry of an Order partially modifying the discovery stay imposed by the PSLRA in order to

preserve evidence and prevent undue prejudice to Plaintiff. Specifically, Plaintiff seeks authorization to obtain discovery from Defendants, including: (1) documents and deposition discovery demonstrating the precise terms of McGraw-Hill's division that will enable Plaintiff to evaluate whether the Company's plans create issues of successor liability, such that additional defendants should be included in this case; and (2) deposition discovery of the appropriate records custodian(s), information technology, or other employees concerning precisely what efforts are being made to preserve information, especially electronic data, following the Company's recently-announced reorganization.

## ARGUMENT

### I.   PLAINTIFF WILL BE PREJUDICED IF THE COURT DOES NOT PARTIALLY LIFT THE PSLRA DISCOVERY STAY

#### A.   Courts Have Explicit Authority to Modify the PSLRA Discovery Stay

The PSLRA provides that discovery in a securities fraud class action is stayed while a motion to dismiss is pending:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, ***unless*** the court finds upon the motion of any party that particularized discovery is ***necessary to preserve evidence or to prevent undue prejudice*** to that party.

15 U.S.C. §78u-4(b)(3)(B).[3] The legislative history of the PSLRA indicates that Congress enacted the discovery stay to prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement. *See* H. Rept. No. 104-369 (Nov. 28, 1995). Thus, the PSLRA explicitly provides courts with discretion to allow discovery to go forward prior to a judicial determination of the sufficiency of a plaintiff's complaint. *See In re LaBranche Sec. Litig.*,

---

[3] Unless stated otherwise herein, internal quotations and citations are omitted and all emphasis is added.

- 4 -

333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-MD-1725, 2007 U.S. Dist. LEXIS 10408, at *13 (E.D. Mich. Feb. 15, 2007) (noting that if Congress had intended an absolute stay on discovery, it would not have authorized a judicial reprieve).

### B. The Discovery Stay Should Be Modified to Allow Limited Discovery in Order to Preserve Evidence and to Prevent Undue Prejudice to Plaintiff

Although it involved a different set of facts, the District Court's reasoning in *In re WorldCom, Inc. Sec. Litig.* rings true here:

> The legislative history of the PSLRA indicated that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint.
>
> Neither rationale underlying the PSLRA's discovery stay provision is contravened by plaintiffs' application. [Plaintiff] has clearly not filed the complaint to initiate a "fishing expedition" in search of sustainable claims or to force defendants to settle an otherwise frivolous class action.

234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).

Indeed, this action is a far cry from the frivolous actions that caught Congress' attention. Plaintiff's 425 paragraph SAC is highly-particularized and is supported by extensive documentary evidence, including 51 exhibits, corroborating the detailed accounts of Plaintiff's well-placed confidential witnesses. Plaintiff's allegations are further bolstered by nine findings of fact resulting from the Senate Subcommittee's extensive investigation into S&P. *See* SAC at ¶14.[4]

---

[4] On May 2, 2011, Plaintiff requested that the Court take judicial notice of the 635-page "Majority and Minority Staff Report" released on April 13, 2011 by the Senate Subcommittee and entitled "Wall Street and the Financial Crisis: Anatomy of a Financial Collapse," which represented the culmination of a two-year bipartisan investigation into the "key causes of the financial crisis." As of

This is not a case where Plaintiff seeks discovery in the hopes of finding "some sustainable claim not alleged in the [SAC]" or as leverage to coerce Defendants into settling meritless claims rather than bear the high costs of discovery. *See Delphi*, 2007 U.S. Dist. LEXIS 10408, at *12-*13. Importantly, Plaintiff is ***not*** attempting to amend the SAC: Plaintiff cannot be accused of casting a broad discovery net in the hopes of catching evidence upon which to base new allegations. As set forth below, Plaintiff seeks only limited discovery from McGraw-Hill to combat very real concerns about loss of evidence and to prevent undue prejudice. For the reasons explained below, the Court should grant this Motion and permit Plaintiff to engage in limited discovery, including deposition discovery from the appropriate representatives of McGraw-Hill. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (partially lifting PSLRA stay and holding plaintiffs' requested discovery "is particularized, and it is necessary both to preserve evidence and to prevent undue prejudice to the securities plaintiffs.").

### 1. Discovery is Necessary in Order to Preserve Evidence

The parties to a securities action are under an ongoing duty to preserve evidence "as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(b)(3)(C)(i); *see Lindner v. American Exp. Co.*, No. 10 Civ. 2228 (JSR) (JLC), 2010 WL 4537819 (S.D.N.Y. Nov. 9, 2010). As the PSLRA expressly states, the automatic stay can be lifted to preserve evidence. 15 U.S.C. §78u-4(b)(3)(C)(i). A party alleging that discovery is necessary to preserve evidence must present more than fading memories and possible loss – there must be a specific threat of loss. That threat clearly exists here.

---

May 31, 2011, Plaintiff's request for judicial notice was fully briefed and it remains pending before the Court.

When a securities plaintiff faces a far-reaching reorganization of its corporate defendant, modification of the PSLRA stay is justified:

> With this background in mind, the plaintiffs' showing of necessity to preserve evidence appears substantial, at least as to discovery from Royal Ahold. Royal Ahold appears to be undertaking a wide-ranging corporate reorganization. It has already divested itself of key subsidiaries, and it plans to divest itself of more - including some, such as Disco, that allegedly played central roles in the company's purported fraud. ***These divestitures create a reasonable concern that documents may be lost despite Royal Ahold's best efforts to preserve them***. The materials at risk are, admittedly, not the documents at issue in the plaintiffs' motion: materials produced to outside agencies will, presumably, be preserved by those agencies. Nevertheless, the divestitures add urgency to the discovery timetable, and discovery of the previously produced documents, which are likely to comprise the most critical evidence in the case, could help the plaintiffs identify other specific materials that may be at risk of loss. ***Faced with a shifting corporate landscape and concerns about evidentiary loss that are by no means "wholly speculative,"*** *CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okl. 2001), ***the plaintiffs are not required to rely on the assurances of counsel that relevant evidence will be preserved***. The PSLRA permits them to seek discovery to aid their efforts to preserve the evidence for themselves.

*Royal Ahold*, 220 F.R.D. at 251 (finding plaintiffs' case "far from frivolous" because it included "over 400 pages of detailed allegations" with many claims "supported by quotations or citations from documentary evidence").

Although differences exist, the facts here are also reminiscent of the situation facing plaintiffs in *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004). There, while separate motions to dismiss by defendants were pending, plaintiffs brought a motion to lift the stay as to defendant Arthur Andersen ("Andersen") "in order to conduct discovery on the issue of successor liability, in the wake of the bankruptcy of Andersen LLP under the exception for preservation of evidence and prevention of undue prejudice." *Id.* at 352. In order to resolve any ambiguity concerning the continuing applicability of the PSLRA discovery stay, the Court assumed "for the sake of argument, that the stay applies pending the resolution of literally 'any motion' to dismiss." *Id.* With that assumption in mind, the Court held:

- 7 -

> [P]laintiffs have raised compelling evidence that further delay of discovery on the issue of successor liability could hamper their ability in the long term to achieve the relief they seek, citing "the need to locate and identify Andersen's successors, determine if plaintiffs can assert valid claims against such successors *and ensure that evidence is being preserved*." There is no reason under the statute's language or its purpose to countenance further delay by preventing discovery from proceeding as to Andersen, against whom this case is now clearly going forward. Given the concerns raised in a situation *where the entity being sued is winding down, resumption of discovery is desirable in order to prevent undue prejudice and preserve evidence*. The stay will accordingly be lifted.

*Id*. at 352-53.

While the Court here has not yet determined whether Plaintiff's case is "clearly going forward," McGraw-Hill is clearly "winding down" as it separates into two independent, new publicly traded companies. Accompanying this restructuring is a shuffling of key executives. Plaintiff is without knowledge as to what efforts Defendants are taking to preserve and maintain all evidence and data both pre- and post-reorganization to ensure no spoliation occurs. Without the ability to take limited discovery on that very issue and ensure preservation of documents, Plaintiff faces the imminent possibility that key data will be lost or otherwise destroyed as McGraw-Hill severs itself. Even seemingly basic issues, such as what will become of the Individual Defendants' active and archived email accounts, present a tangible risk of data loss. These events, which are occurring approximately seven years after the start of the Class Period and more than four years after this litigation commenced, present the very real and imminent possibility of inadvertent evidence spoliation or destruction.

Plaintiff not only needs to fully ensure that evidence, especially crucial electronic data, is being preserved, but also needs to fully explore any and all issues, to the extent they exist, related to successor liability. Successor liability may be established where a corporation purchases the assets of another company and the following circumstances exist: (1) the company expressly or impliedly agrees to assume the liabilities; (2) there was a merger or consolidation of the two entities; or (3) the

- 8 -

buyer is a mere "continuation" of the seller.  *See Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 838 (S.D.N.Y. 1977).  Without relief from the PSLRA discovery stay it is impossible for Plaintiff to determine whether McGraw-Hill's successors will assume McGraw-Hill's liabilities.  Reports indicate the Company will effectuate its plans through a "tax-free spin-off of the education business to McGraw-Hill shareholders."  Although preliminary facts *seem* to indicate that McGraw-Hill Markets will continue in the place of McGraw-Hill – save for its education business – the ultimate outcome and impact on Plaintiff's claims remains decidedly unclear.  For this reason, discovery demonstrating the exact terms of McGraw-Hill's dissolution is required.

### 2. Plaintiff's Proposed Discovery Will Be Particularized

A discovery request is considered particularized when "'it is directed at specific persons,' and 'it identifies specific types of evidence that fall within its scope.'"  *Koncelik v. Savient Pharms., Inc.*, No. 08 Civ. 10262(GEL), 2009 WL 2448029, at *1 (S.D.N.Y. Aug. 10, 2009) (quoting *Fisher v. Kanas*, No. 06 Civ. 1187, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2008) (quoting *In re Tyco Int'l, Ltd. Sec. Litig.*, No. MDL00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659, at *12 (D.N.H. Jan. 29, 2003) (analyzing requirement in context of preservation of subpoenas to third parties))).

Here, Plaintiff's anticipated discovery requests will satisfy both prongs of the requirement.  First, Plaintiff merely seeks authorization to serve discovery requiring that Defendants produce the record custodians and/or information technology persons with knowledge of the Company's records and data in order to ensure that the documents and data that Plaintiff will be entitled to discover once the stay is permanently lifted are preserved for Plaintiff's future review.  Plaintiff is not requesting that Defendants produce the actual documents or deponents who will testify as to facts underlying Plaintiffs' claims, only that the Defendants make available those persons with knowledge of the documents and control over and responsibility for their preservation as McGraw-Hill undergoes its

historical separation. Thus, this aspect of Plaintiff's requests satisfies the "particularized discovery" requirement.

Second, on the issue of successor liability, Plaintiff need only obtain documents demonstrating the precise terms of the Company's division and deposition testimony of a designated corporate representative or representatives with sufficient understanding of the particulars behind McGraw-Hill's separation into two independent publicly traded companies. Any discovery obtained as a result would necessarily be limited to this issue and, thus, particularized. Moreover, to the extent necessary Plaintiff is willing to enter into an appropriate confidentiality order to protect any confidential information.

### C.     Modification of the PSLRA Discovery Stay Will Not Impose an Undue Burden on Defendants

"[I]t is customary to consider whether a production request places an undue burden on the party from which it is requested." *In re WorldCom*, 234 F. Supp. 2d at 306. Here, Plaintiff seeks nothing more than access to those persons with control over and responsibility for preserving information, as well as a designated corporate representative or representatives with an understanding of McGraw-Hill's upcoming separation and documents demonstrating the terms of that separation. Accordingly, as the costs, expenses and time commitment associated with such discovery are minor, complying with this request will place only the slightest burden upon Defendants.

Moreover, the burden on Defendants must be evaluated in context. This is not a situation where a single executive is stepping down from the Company. A truly seismic shift is scheduled to occur at McGraw-Hill over the course of the next year. With that shift in mind, it is more than reasonable to permit Plaintiff the opportunity to seek limited discovery for the purpose of ensuring that evidence is not lost along the way and that potential issues of successor liability are addressed.

## II.     CONCLUSION

Defendants cannot make a good faith argument that this is a strike suit aimed at coercing a settlement. Nor can Plaintiff's request be reasonably characterized as a "fishing expedition" to find evidence in support of claims not yet alleged. Accordingly, Plaintiff requests that the Court modify the discovery stay and allow Plaintiff access to those persons in control of and with responsibility for preserving documents related to this matter in order to ensure the documents and evidence are preserved as McGraw-Hill undertakes its "Growth and Value Plan." Similarly, Plaintiff seeks access to the appropriate Company representative or representatives that can address any and all issues related to successor liability, as well as access to the documents demonstrating the terms of the division.

Based on the foregoing reasons, Plaintiff's Motion to Partially Modify the PSLRA Discovery Stay should be granted in its entirety, with such other and further relief as the Court deems just and proper.

DATED:  September 23, 2011  ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID J. GEORGE (*pro hac vice*)
ROBERT J. ROBBINS (*pro hac vice*)

*/s/ Robert J. Robbins*
ROBERT J. ROBBINS

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiff*

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
Telephone:  305/529-2801
305/447-8115 (fax)

*Additional Counsel for Plaintiff*

- 13 -

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 23, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Robert J. Robbins*
Robert J. Robbins
