UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDE REESE, Individually and on
Behalf of All Others Similarly Situated,

                   Plaintiff,

           -against-

THE MCGRAW-HILL COMPANIES,
INC., HAROLD MCGRAW III, and
ROBERT BAHASH,

                   Defendants.

08 Civ. 7202 (SHS)

<u>OPINION & ORDER</u>

---

SIDNEY H. STEIN, U.S. District Judge.

    This securities fraud action was filed on behalf of a putative class of former shareholders of The McGraw-Hill Companies, Inc. to recover losses incurred as a result of the company's alleged misstatements made by Standard & Poor's ("S&P"), its financial services division. Plaintiffs brought claims against McGraw-Hill and two of its executives—Harold McGraw III and Robert Bahash—pursuant to Section 10(b) and Rule 10b–5, as well as Section 20(a) of the Securities Exchange Act of 1934. This Court previously dismissed plaintiffs' second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Reese v. McGraw-Hill Cos.*, No. 08 Civ. 7202 (SHS), 2012 U.S. Dist. LEXIS 83753 (S.D.N.Y. March 30, 2012), *aff'd sub nom. Boca Raton Firefighters and Police Pension Fund v. Bahash*, 506 F. App'x 32 (2d Cir. 2012).

    Nearly one year after the issuance of this Court's Order, interim lead plaintiff Boca Raton Firefighters and Police Pension Fund filed a motion seeking: (1) the extraordinary remedy of relief from final judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) and (2) leave to amend the complaint for the third time pursuant to Federal Rules of Civil Procedure 15(a) and (d), citing new facts that allegedly would have changed the outcome. Almost two months later, plaintiffs filed an additional motion seeking leave to file a "Supplemental Memorandum

with Additional, Recently Discovered Evidence" in support of their Rule 60(b)(2) motion.

Because the purported new facts set forth by plaintiffs would not have changed the outcome of the Court's previous decision, those motions are denied.

## I. BACKGROUND

Plaintiffs based their securities fraud claims on allegations of egregious mismanagement by S&P of its ratings business—specifically of its ratings of residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs") backed by those securities. According to the complaint, S&P's ratings of these financial instruments were motivated not by an interest in the quality and accuracy of those ratings, but by S&P's profits and its need to maintain market share—resulting in inaccurate and biased results. Taking these allegations as true, the Court nevertheless found that certain alleged misstatements were commercial puffery, that plaintiffs failed to allege with particularity circumstances demonstrating that other alleged misstatements were false, and that they failed to allege scienter adequately. Plaintiffs now urge that, because certain newly discovered facts correct these defects, this Court should rescind its previous dismissal of the complaint with prejudice.

### A. Procedural History

This litigation began with the filing of a complaint in 2007 in the U.S. District Court for the District of Columbia. That court appointed Boca Raton Firefighters and Police Pension Fund, which had purchased shares of McGraw-Hill on the open market between October 2004 and March 2008, as interim lead plaintiff. Plaintiffs filed a consolidated class action complaint in May 2008, and the parties consented to a transfer of the litigation to the Southern District of New York in June 2008. Thereafter, plaintiffs filed in this Court an amended complaint in December 2008 and a second amended complaint in July 2010.

Following plaintiffs' multiple opportunities to correct their pleadings, the Court dismissed the second amended complaint for failure to state a claim in a March 30, 2012 Order. *Reese*, 2012 U.S. Dist. LEXIS 83753. That

Order was affirmed in all respects by the U.S. Court of Appeals for the Second Circuit. *Boca Raton Firefighters*, 506 F. App'x 32.

### B. Dismissal of Plaintiff's Complaint and Affirmance of that Dismissal

The Court assumes the parties' familiarity with the orders dismissing plaintiffs' complaint and affirming that decision, but highlights certain aspects of their analyses upon which this Opinion focuses. Plaintiffs alleged that S&P and certain of its executives defrauded investors by making numerous material misstatements, which fell into three general categories. The two categories at issue here are statements representing the stringency, independence, and integrity of S&P's credit ratings process (*see, e.g.*, Second Am. Compl. ¶¶ 349, 351, 362) and statements regarding S&P's ongoing surveillance of the credibility of its ratings (*see, e.g.*, *id.* ¶¶ 271, 325, 327).[1]

In the memoranda of law supporting the motion to reopen, plaintiffs emphasize several allegedly misleading statements by S&P executives from the second amended complaint regarding the integrity of the company's ratings:

- A statement by Executive Vice President Vickie Tillman during a July 2007 conference call in which she stated, inter alia, that "[t]ightening criteria may have an adverse impact on [S&P's] market share, but [the company] will continue to develop and adjust [its] criteria to reflect how changing conditions impact credit risk." (*Id.* at ¶ 349.)

- Tillman's answer to a question on the same July 2007 call, in which she explained that S&P "raised [its] requirements in terms of ratings" in early 2007 for "collateralized mortgage-backed securities," despite the fact that this action could "have an adverse impact on whether [investment banks] come to Standard & Poor's

---

[1] Plaintiffs do not challenge the Court's dismissal of their securities fraud claims alleging misrepresentations or omissions in McGraw-Hill's financial statements; they omit those allegations from the proposed third amended complaint.

or not, but that's not what [S&P is] concerned about. We're concerned about calling it as it is." (*Id.* at ¶ 351.)

- A statement by individual defendant McGraw during a September 2007 Goldman Sachs conference that S&P has "institutional safeguards in place to ensure the independence and integrity of [its ratings] opinions." (*Id.* at ¶ 362.)

- Another statement by McGraw during that conference explaining that S&P does not differentiate between the financial products it rates, but rather "appl[ies] its own predetermined, nonnegotiable, and publicly available criteria and assumptions to the facts presented"—even though "there may be more dialogue between S&P and an issuer in [a] structured finance transaction." (*Id.*)

Plaintiffs similarly draw the Court's attention to certain alleged misstatements regarding S&P's ongoing surveillance of the credibility of its ratings from the second amended complaint:

- A statement by Executive Managing Director of Structured Finance Ratings Joanne Rose during a July 2005 conference in which she explained that S&P has a "dedicated surveillance unit to oversee the continuing credibility of [its] ratings" and that the ratings are "regularly reviewed" and back tested "to show their credibility over time." (*Id.* at ¶ 271.)

- A statement by McGraw during a March 2007 conference that "S&P has [a] fully integrated surveillance process for residential mortgage-backed securities and CDOs . . . mean[ing] that S&P will determine what effect, if any, the increase in delinquencies on certain sub-prime mortgages has on both its rated residential mortgage-backed security transactions, and those collateralized debt obligations transactions which hold residential backed securities." (*Id.* at ¶ 325.)

All of these statements are selective excerpts from long block quotes in plaintiffs' second amended complaint, which included over 100 pages of such allegations.

In its Order dismissing the second amended complaint, the Court determined that the alleged misstatements in the first category were not

4

actionable because they constituted "mere commercial puffery." *Reese*, 2012 U.S. Dist. LEXIS 83753 at *3. The claimed misstatements in the second category were not actionable because the complaint did not state with particularity how S&P's alleged misconduct with regard to its ratings surveillance rendered the statements fraudulent. *Id.* at *4. Finally, the Court found that plaintiffs had not set forth facts to support an inference "that either McGraw or Bahash knew of facts or had access to information that contradicted either man's statements," and therefore failed to demonstrate scienter. *Id.* at *5.

On appeal, the Second Circuit panel affirmed this Court in all respects in a December 2012 Summary Order. First, it wrote that the statements representing the independence and integrity of S&P's ratings were commercial puffery because of their "generic, indefinite nature." *Boca Raton Firefighters*, 506 F. App'x 32 at *37. It further determined that plaintiffs had not demonstrated with particularity how or why S&P's statements about its ratings surveillance were materially false, instead "leaving the District Court to search the long quotations in the complaint for particular false statements, then determine on its own initiative how and why the statements were false." *Id.* at *38. Finally, the Second Circuit found that the particularity requirement had not been met with regard to demonstrating scienter. *Id.* at *39.

### C. The Allegedly "Newly Discovered Evidence"

Plaintiffs represent that, since this Court's dismissal of the second amended complaint and the Second Circuit's affirmance of that decision, they have learned certain new information that merits the exceptional remedy of relief from judgment. Plaintiffs derive these new facts from two sources.

The first and primary source is a 119-page complaint filed by the Department of Justice (the "DOJ complaint") against McGraw-Hill and S&P on February 4, 2013 in the U.S. District Court for the Central District of California.[2] The DOJ complaint contains detailed factual allegations

---

[2] *See United States v. McGraw-Hill Cos., Inc., et al.*, No. CV 13-0779 DOC(JCGx), 2013 U.S. Dist. LEXIS 99961 (C.D. Cal. July 16, 2013). That district court recently denied defendants' motion to dismiss the government's complaint, which alleges that

about S&P's mismanagement of its RMBS and CDO ratings during the majority of the proposed class period in this case.[3] (DOJ Compl., Ex. 2 to Decl. of David J. George, Esq. dated March 28, 2013.) The allegations in the DOJ action include specific representations about the existence and content of numerous documents, as well as certain alleged events, that plaintiffs argue support their securities fraud claims. Plaintiffs highlight the following such documents and events described in the DOJ complaint:

- a July 2005 internal S&P report, which explained that S&P had slowed its roll out of a new ratings model due to its negative impact on CDO ratings (DOJ Compl. ¶ 178);
- a July 2007 internal email explaining that CDO issuers were upset that subprime RMBS ratings downgrades were affecting their ability to issue CDOs and stating that the collateral underlying certain deals was likely to be downgraded immediately after their closing (*id.* at ¶ 254);
- S&P analysts' decision to rate a newly created CDO (the "Delphinus CDO") in July 2007 despite the fact that the rating of the assets underlying at least one of the CDO's tranches indicated that the collateral could not support the deal's proposed structure (*id.* at ¶ 264);

---

McGraw-Hill and S&P committed mail fraud, wire fraud, and financial institution fraud. *Id.* The government is seeking civil penalties for the alleged violations of those criminal fraud statutes pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a. *Id.* at *9-10. The opinion denying McGraw-Hill's motion to dismiss makes clear the distinctions between that action and this one in several respects: (1) that case alleges specific, verifiable representations by S&P and specific facts showing that these representations were false and misleading; and (2) the government in that case alleges S&P defrauded the end users of its ratings, whereas this case was brought by S&P shareholders, to whom the accuracy of S&P's ratings matters only insofar as it rendered statements upon which shareholders relied when purchasing McGraw-Hill securities materially false or misleading. *Id.* at *21. Moreover, and perhaps most significantly, this action alleges violations of civil securities laws, which require a showing of different elements to state a plausible claim for relief than the criminal fraud statutes referenced in the DOJ complaint.

[3] The DOJ complaint alleges that fraudulent ratings took place between September 2004 and October 2007. (DOJ Compl. ¶ 7.) The proposed class period in this action is October 2004 through March 2008. (Pls.' Mem. of Law at 2.)

- a July 2007 internal email explaining that planned changes in RMBS ratings would "result in unprecedented CDO downgrades"—and that "all of this is firewalled and highly confidential" (*id.* at ¶ 251);
- the content of a March 2007 internal presentation revealing, inter alia, that recent RMBS downgrades had not yet resulted in downgrades of CDOs collateralized by those securities (*id.* at ¶ 233(i));
- a June 2007 internal surveillance report explaining that the ratings performance of RMBS continued to be "predominately negative," particularly with regard to 2006 vintage RMBS and the lowest-rated tranches of subprime RMBS broadly (*id.* at ¶ 239(c));
- an April 2007 internal analysis showing that the actual average default rate of 2005 and 2006 vintage subprime RMBS was significantly higher than the assumptions upon which analysts had based their ratings of CDOs backed by these securities (*id.* at 235(d)); and
- an allegation that an unnamed executive "regularly expressed frustration to her colleagues" about the fact that certain S&P executives were preventing her from downgrading the ratings of poorly performing subprime RBMS (*id.* at ¶ 211).

The second source of new information is deposition testimony given by Frank Raiter, head of RMBS ratings for S&P, taken during discovery in a different suit[4] and unsealed on July 2, 2012.[5] Plaintiffs draw the Court's attention to two of Raiter's statements that they contend support their securities fraud claims: (1) that S&P refused to implement a new, superior ratings model, despite one being available, because it was satisfied with its current market share; and (2) that managers—specifically McGraw—

---

[4] *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS) (S.D.N.Y. April 26, 2013) (order approving stipulation of dismissal with prejudice). McGraw-Hill was also named as a defendant in *Abu Dhabi*; that suit was voluntarily dismissed with prejudice as to McGraw-Hill in April 2013.

[5] The Second Circuit denied plaintiffs' motion to take judicial notice of the Raiter deposition in its order affirming this Court's initial dismissal of the case. *Boca Raton Firefighters*, 506 F. App'x at 36 n.4, 39.

conducted the business such that "profits were running the show." (Exs. 5, 6 to George Decl.)

Citing the aforementioned purported new evidence, plaintiffs filed this motion for relief from judgment on March 28, 2013.

On May 22, 2013, plaintiffs filed a motion for leave to supplement the March 28 motion with yet more claimed new evidence. This evidence consists of deposition testimony of two former high-level S&P executives, allegedly received from DOJ in May 2013. Those executives—Richard Gugliada, former global practice leader for CDOs, and Elwyn Wong, former managing director in the CDO group—testified that the need to increase profits and maintain market share became a factor in the CDO rating calculus, along with analytical concerns, after 2001. (Dep. of Richard Gugliada dated Dec. 13, 2011, Ex. A to Decl. of Samuel H. Rudman, Esq. dated May 22, 2013; Dep. of Elwyn Wong dated Dec. 12, 2011, Ex. B. to Rudman Decl.)

## II. ANALYSIS

The Court discusses the two motions before it—the motion for relief for final judgment and the motion to supplement the original motion with "additional, recently discovered evidence"—in turn.

### A. Motion for Relief from Judgment

Plaintiffs move for relief from final judgment pursuant to Rule 60(b)(2), which permits a court to vacate a previously entered final judgment on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered" within twenty-eight days after the entry of judgment. Fed. R. Civ. P. 60(b)(2). A motion pursuant to Rule 60(b)(2) is "generally not favored" and is "properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.").

The decision whether to grant such a motion rests within the district court's sound discretion. *Int'l Bhd. of Teamsters*, 247 F.3d 391. This discretion is exercised with the purpose of finding "a balance between

serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." *House v. Sec'y of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982). "[F]inal judgments should not be lightly reopened"—only when "substantial justice" requires it. *Nemaizer*, 793 F.2d at 61 (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981)) (quotation marks omitted).

A party seeking relief pursuant to Rule 60(b)(2) must meet an "onerous" standard, *Int'l Bhd. of Teamsters*, 247 F.3d at 392, and it has the burden of demonstrating each of the following four elements:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Id.*

Plaintiffs focus their argument on factor three, contending that the Court should grant the disfavored relief of rescinding its previous judgment because, had the above-referenced facts been included in their original complaint, the outcome of the Court's previous decision would have been different.[6] They claim the new facts correct two defects the Court identified in its Order dismissing the complaint. First, plaintiffs urge that these facts demonstrate that S&P's statements about the integrity and independence of its ratings were not mere commercial puffery, but were demonstrably false statements that support an inference of scienter. Second, they contend that the new information demonstrates with

---

[6] Plaintiffs also claim that they had exhaustively investigated their original claims, but were unable to discover the above-referenced facts prior to the filing of the DOJ complaint and the public disclosure of the Raiter deposition. (*See* George Decl. ¶¶ 49-61.) The Court assumes for the sake of argument that this assertion is true. Neither party disputes that the purported new evidence—all of which references events occurring or documents produced between 2005 and 2007—existed before March 2012, when this Court granted defendants' motion to dismiss the second amended complaint.

9

particularity the falsity of S&P's statements about the ongoing surveillance of its ratings, as well as scienter in the issuance of those statements.

To demonstrate how the newly discovered evidence cures the defects that previously doomed their pleadings, plaintiffs have submitted a proposed, extremely lengthy, third amended complaint along with their motion, including the new allegations based on the facts from the DOJ complaint and the Raiter deposition. The proposed third amended complaint runs 525 paragraphs and 194 pages. (Ex. 1 to George Decl.)

The Court has reviewed these extensive submissions and finds that plaintiffs have failed to demonstrate that they are deserving of the discretionary relief afforded pursuant to Rule 60(b)(2). Plaintiffs' purported new evidence[7] would not have changed the outcome of the original decision because those allegations do not correct the pleading defects for which the Court dismissed its previous complaint.

Instead, plaintiffs' motion represents an attempt to reargue their prior motion. They select different carefully excerpted phrases from the large number of alleged misrepresentations included in the second amended complaint and claim that they were misleading based on alleged new facts that—although not specifically referenced in the second amended complaint—are of the same character as the facts plaintiffs previously claimed demonstrated falsity and scienter. The new evidence thus would not have changed this Court's previous ruling and is cumulative of

---

[7] Defendants challenge plaintiffs' proffered new evidence from the DOJ complaint on the ground that, because it originates from allegations in a complaint, it is not admissible. The Court does not dispute the uncontroversial proposition that mere allegations from a complaint are hearsay and therefore not admissible. *See, e.g.*, *Rivera v. Metro. Transit Auth.*, 750 F. Supp. 2d 456, 461 (S.D.N.Y. 2010) ("An unsworn statement by a non-party in a complaint in another lawsuit is hearsay when offered to prove the truth of that statement. It is not admissible."). That said, because plaintiffs are attempting to reopen this litigation at the motion to dismiss phase—a stage at which all allegations are assumed to be true—the Court focuses on the other deficiencies in their motion. *See Kurzweil v. Philip Morris Companies, Inc.*, No. 94 Civ. 2373 (MBM), 1997 WL 167043 (S.D.N.Y. Apr. 9, 1997) ("On a Rule 12(b)(6) motion I must take plaintiffs' factual allegations to be true. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This is the same standard I must apply to plaintiffs newly discovered evidence on a Rule 60(b)(2) motion.").

plaintiffs' previous allegations in its nature and purpose, if not in all its details.

To prevail on a claim that defendants "made material misrepresentations or omissions in violation of Section 10(b) and Rule 10b–5, [plaintiffs] must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[8] *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)) (quotation marks omitted).

As with all fraud claims, securities fraud claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be stated with particularity. And, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a party alleging securities fraud must identify each allegedly misleading statement, state the reasons why each statement was misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b).  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)).

The Court's previous ruling focused on elements one and two of the Section 10(b) and Rule 10b–5 test, finding plaintiffs' pleading lacking. Plaintiffs have failed to convince the Court that the new evidence to which

---

[8] An element of plaintiffs' Section 20(a) claims is to properly allege a primary violation of the Exchange Act. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). The Court therefore focuses on the Section 10(b) and Rule 10b–5 claims, without which the Section 20(a) claims necessarily fall. *See, e.g.*, *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (dismissing control person claims for failure to plead a primary violation of the Exchange Act); *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 496-97 (S.D.N.Y. 2009) (same).

they cite is "of such importance that it probably would have changed [this] outcome." *See Int'l Bhd. of Teamsters*, 247 F.3d at 392.

### 1. *S&P's Statements Regarding the Integrity of Its Ratings*

This Court previously held that S&P's statements regarding the integrity and independence of its ratings were "mere commercial puffery" and that such statements could not form the basis for a finding of Section 10(b) liability. *Reese*, 2012 U.S. Dist. LEXIS 83753, at *3-4. Plaintiffs now highlight different passages from the second amended complaint and claim that new facts from the DOJ complaint and the Raiter deposition demonstrate that these statements are actionable. In general, plaintiffs claim that the new facts now render S&P's statements about the integrity and independence of its ratings misleading because they demonstrate that, on several occasions, S&P adjusted the content and application of its ratings criteria based on the desire to please clients, preserve market share, or increase profits.

The Court concludes that these new facts do not alter the previous conclusion that the statements are "generic" and "indefinite." *See Boca Raton Firefighters*, 506 F. App'x at 37. That determination dealt with the nature of the statements themselves, which this Court and the Second Circuit concluded were not capable of "meaningfully altering the mix of available information about the company." *Id.*

Moreover, even if plaintiffs had somehow persuaded the Court that the new select phrases it emphasizes were specific enough to be proven false—which they have not—plaintiffs have not showed why these statements are misleading as a result of their new evidence. Take, for example, the most arguably definite statement: that S&P "appl[ies] its own predetermined, nonnegotiable, and publicly available criteria and assumptions to the fact presented"—couched by the caveat that "there may be more dialogue between S&P and an issuer in [a] structured finance transaction." (Second Am. Compl. ¶ 362.) Newly alleged facts—such as that S&P slowed the adoption of a new ratings model due to its negative impact on CDO ratings or that S&P analysts discussed that CDO issuers were upset by subprime RMBS ratings downgrades—do not demonstrate why this statement or others like it are false. (*See* DOJ Compl. ¶¶ 178, 254.)

At bottom, the fact remains that plaintiffs have not convinced the Court that it should alter its conclusion that S&P's statements about the integrity and independence of its ratings are not specific enough to amount to a guarantee that its ratings were made without regard to profits, market share, or client feedback. *See Boca Raton Firefighters*, 506 F. App'x at 37; *see also ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009). New facts purportedly demonstrating that profits, client satisfaction, and market share were considerations in S&P's rating of securities would not, therefore, have changed the outcome of this case.

### 2. *S&P's Statements Regarding Its Surveillance Practices*

With regard to plaintiffs' allegations regarding the falsity of S&P's statements regarding its surveillance practices, this Court previously found that the complaint failed to set forth with particularity how these statements were misleading. *Reese*, 2012 U.S. Dist. LEXIS 83753, at *4. Specifically, it found that allegations that ratings surveillance was "perpetually late" did not render statements false explaining that ratings were "reviewed regularly" and that the surveillance process was "fully integrated . . . mean[ing] that S&P will determine what effect, if any, the increase in delinquencies on certain sub-prime mortgages has on both its rated residential mortgage-backed security transactions, and those collateralized debt obligations transactions which hold residential backed securities." (Second Am. Compl. ¶ 325.) Plaintiffs now draw the Court's attention to the same two statements from the second amended complaint and to "new" facts regarding the lag in time between downgrades in RMBS ratings and downgrades of CDOs that had RMBS as a portion of their collateral to support its claim that S&P's statements regarding its ongoing surveillance of credit ratings were misleading.

The alleged new facts, however, are of the same character as the previous allegations and, as with the statements in the dismissed complaint, do not demonstrate with particularity how they render S&P's representations false. Plaintiffs seize on the phrase "fully integrated" to argue that the evidence demonstrating that downgrades to RMBS did not immediately result in downgrades to CDOs proves that S&P's statements were misleading. Taken in context, however, the statements do not

13

provide any time frame for the integration of RMBS downgrades and any resulting CDO downgrades. Thus, new allegations that downgrades were not immediate and took place only after extensive internal discussions do not render S&P's statements false. The new facts, therefore, are cumulative of the previous allegations and are insufficient to convince the Court that the outcome of the motion to dismiss would have been different had those facts been included in the original pleadings.

Because plaintiffs cannot demonstrate each of the elements required to convince the Court to take the extraordinary step of reopening a dismissed action pursuant to Rule 60(b)(2), the Court declines to grant such relief. The interests of justice do not require it.

### B.  Motion to Supplement

"A motion under Rule 60(b) must be made within a reasonable time"; a party moving pursuant to Rule 60(b)(2) must do so "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). "The one-year period represents an extreme limit, and the motion may be rejected as untimely if not made within a 'reasonable time' even though the one-year period has not expired." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2866 (3d ed. 2013).

Plaintiffs' motion to file a supplemental memorandum in support of its Rule 60(b)(2) motion is essentially a second motion pursuant to Rule 60(b)(2). It was submitted well over a year after the issuance of this Court's Order dismissing the case and is dismissed as untimely. Even if it were not untimely, however, the motion would nonetheless be denied on the ground that the additional newly discovered facts it purports to introduce are of the same nature as the facts previously alleged in both the second amended complaint and in plaintiffs' initial motion for relief from judgment. Amendment of the motion would be futile.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for relief from final judgment and for leave to amend their complaint for the third time on the basis of newly discovered evidence is denied (Dkt. No. 62), as is their

motion seeking leave to file a supplemental memorandum with additional newly discovered evidence, (Dkt. No. 70).

Dated:  New York, New York
        September 24, 2013

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.